WEATHERFORD, ET ALS. v. JAMES.

1. When a vendor sells a greater interest than he has in the land, or knowingly
sells a defective title, if the vendee is willing to take such title as he has, or such
portion of the subject of the contract as he can control, a Court of Chancery
will decree a specific performance to that extent.

2. But where the contract is not to convey the fee absolutely, but on a contingen-
cy, which has not happened, the vendee is not entitled to insist on the convey-
ance of a less estate, and an abatement of the price.

3. Where a vendee stipulates that, in the event he is not able to make a title in fee
to the land, he will execute a mortgage on certain slaves, a Court of Chancery

will not decree a conveyance of the land, unless the party is unable to comply with the alternative contract.

4. A decree is final, which settles the rights of the parties, although there be a reference to the master to compute damages, &c.

Error to the Chancery Court at Monroeville.

This was a bill in Chancery, filed by the defendant in error, against Margaret Tait, Downey and wife, and Newman and wife, for a specific performance of a contract, entered into by Newman with the defendant, by which he agreed to sell the interest of his wife, an Indian woman, in a tract of land which the plaintiffs in error were said to have acquired by the treaty of Fort Jackson, and an act of Congress passed in 1817.

The contract of Newman, which is set forth at large in the opinion of the Court, was to sell the interest of his wife in the land, provided he could obtain the passage of an act of Congress authorizing him to do so; and on his failure to obtain such act, that he would execute a mortgage on certain slaves, to secure the repayment of the purchase money.

The act of Congress was never passed; and his Honor, the Chancellor, having decided that Newman was a tenant by the curtesy on the bill, answers, and proof, decreed that the complainant was entitled to such estate as Newman could convey,—that partition be made between the defendants, and directed an inquiry to be made by the Master, whether the complainant had been evicted by the defendant, of the possession of the lands, by a judgment obtained at law, and also, whether any damages had been paid by the complainant on the judgment at law. The decree also directed the Master to ascertain the value of Newman's estate, estimating the fee at eight hundred dollars; and ordered the costs to be taxed against the defendants.

From this decree, this writ of error is prosecuted.

Peck, for plaintiffs in error, cited 4 Porter, 153; 1 Schoales & Lefroy, 119; 13 Peter's Rep. 6; 1 Morroe Rep. 133; Har. Chan. 500; 12 Johns, 508.

Porter, contra, cited Minor's Rep. 13, 101, 117, 184; 7 Porter, 41; 8 ibid 558; Aik. Dig. 246; Lube. Eq. 118; 1

John's Chan. 85; 6 Peters' 763; 16 Pick. 162, 165; 1 Lomax Dig. 215, 242; 1 Story's Eq. 384; 1 John's C. 566; 2 ibid, 158; 10 Vesey, Jr. 260, 314; 7 ibid, 474; 8 ibid, 506; 9 Johns' 450, 463.

ORMOND, J.—This case has been elaborately and ably argued on both sides, upon the construction to be put on the treaty of Fort Jackson, and the act of Congress of 1817, in relation thereto, by virtue of which, the land in this case is supposed to have been acquired.

We are however relieved from the necessity of considering these questions, by the view we take of the bond, executed by the defendant, Alger Newman.

The bond which is the foundation of this proceeding, was executed by Newman, on the eighteenth July, 1832, to the defendant in error, in the penal sum of sixteen hundred dollars. The condition of the bond recites, that Newman in right of his wife, and by virtue of the treaty of Fort Jackson, is possessed of the legal claim, to the undivided third part of a tract of land, which is described, and said to contain four hundred and forty-nine and a half acres, which Newman, in consideration of four hundred dollars, which he acknowledges to have received, and of the same amount; to be paid afterwards, is desirous to transfer in fee simple; but is now prevented from doing so by the treaty of Fort Jackson: he therefore agrees, that he will use his best endeavors to obtain, under a law of Congress, as soon as possible, the right to dispose of and sell the said tract of land ; and should he obtain the said law, he will forthwith convey the same, in fee simple, to the said James. He further agrees that, in the event, he cannot obtain such a law, then he will on the first of March, 1833, or previously, secure by mortgage, one good sound and healthy negro woman and children, of value equal to the penalty of the bond. It is further stipulated that, if the heirs and descendants of Newman convey to James their respective interests in the land, as soon as by the treaty they are authorized to do so, then James agrees to relinquish to each of them respectively, a corresponding proportionate share of the mortgaged property.

This bond is executed by Newman alone, James being no party to it.

The chancellor decreed, that the contract should be specifically performed, so far as Newman was able to perform it; and, having decided that he was a tenant by curtesy, and that James was entitled to that interest, ordered a reference to the master, to ascertain the value of that estate, estimating the fee at eight hundred dollars.

The law of Congress, here spoken of by the parties, never having been passed, and the defendant not being able for that reason to make, or cause to be made to the complainant a title in fee simple, the chancellor decreed, that he should convey the estate he had in the premises.

There is doubtless a numerous class of cases, in which Courts of Chancery have decreed that the vendee, if he elected so to do, might take a defective title, but on examination, it will be found, that these cases turn on the fact that the vendor either undertook to sell a greater interest than he had, or that he knowingly sold a defective title. In such a case, if the vendee is willing to take the title, such as it is, or such portion of the subject of the contract as he can control, it does not lie in his mouth to say that the contract shall not be performed, as far as he has power to perform it. Thus, in the case of Mortlock v. Buller, 10 Vesey, Jr. 315. Lord Eldon says " I also agree, if a man, having a partial interest in an estate, chooses to enter into a contract respecting it, and agreeing to sell it as his own, it is not competent to him afterwards to say, though he has valuable interests, he has not the entirety, and therefore the purchaser shall not have the benefit of his contract. For the purpose of this jurisdiction, the person contracting under those circumstances, is bound by the assertion in his contract; and if the vendee chooses to take as much as he can have, he has a right to that, and to an abatement; and the Court will not hear the objections by the vendor, that the purchaser cannot have the whole." [See also Lawrenson v. Butler, 1 Schoales & Lefroy, 13.]

In this case there was no attempt to impose on the complainant by Newman; both parties appear to have understood the situation of the land; they were contracting about. The com-

plainant desired to purchase the fee in the land, and Newman contracted to sell it, provided an act of Congress could be obtained authorizing the sale. This was supposed by the parties to be necessary, as the land was acquired by the grantees as descendants of Indians, under the treaty of Fort Jackson; and there was a difficulty, real or supposed, as to the right of the grantees to alienate the land thus acquired. As no such act was passed, authorizing Newman or his wife, or both jointly, to convey the title, and as the fee is not, and never was in Newman, it is obvious, that he has no power to convey the fee. But this contract was not to convey the fee absolutely, but only on a contingency which has not happened. The right of the complainant to call on Newman for the title, has never existed. The case then bears no resemblance to those in which the vendor has been required to execute the contract *cy pres*. In that class of cases the vendor is estopped from saying that he cannot make title to the whole, by his contract to that effect; and if the purchaser is willing to take such title as the vendor can make, there does not appear to be any valid objection to it. But that is not this case; and it would be going great lengths for a Court of Chancery, to say that a purchaser should have that which he did not contract for, when the vendee is not to blame, because he did not get that which he really did contract for. In the case of Wheatly v. Slade, 4 Simon's 126, the vendors had agreed to sell a lace manufactory, under the impression they were the entire owners, when in fact, they owned but nine-sixteenths of it, on which was an encumbrance of ten thousand pounds. The Vice Chancellor refused to grant a specific performance, because the encumbrance would exhaust nearly the whole purchase money.

There is still another feature in this case. It was agreed between the parties that, if Newman was not able to convey the the land, he should execute a mortgage on certain negro slaves; it appears therefore, that the parties agreed themselves on the alternative compensation, if the contingency, on which the conveyance of the land was to be made, did not happen. In such a case, a Court of Equity would not, even in a case proper for a specific performance, make such a decree, unless there was a specific ground for the interposition of a Court of Equity; as

for example, that the party was not able to perform the alternative contract. We are aware that the mere circumstance, that a *penalty* is provided in the contract, will not prevent the Court from directing a specific performance; but that is not like the case of an alternative undertaking to do a specific act as in this case.

We are therefore of opinion, that, as Newman did not contract absolutely to convey the title, but only on a contingency which has not happened, this Court has no power to direct that he shall convey a less estate, admitting it to be true, that he has such an estate in the lands, as the Chancellor supposes.

We have not thought it necessary to enquire, whether there is any mutuality in the contract, it not being executed by the complainant, as the view already taken satisfactorily disposes of the cause, if the complainant was equally bound with Newman in the contract.

It is further alledged by the defendant in error, that the decree in this case is not final; and that for this cause, the writ of error must be dismissed. As no writ of error can be prosecuted to this Court, but on a final judgment or decree, except in the case of the dissolution of an injunction, as provided for by the statute, we proceed to enquire what is the character of the decree in this case.

The decree ascertains that the complainant is entitled to a specific performance of the contract, and settles the rights of the parties, so far as to declare that the complainant is entitled to the possession of the land, and to such estate as Newman had in it. A reference is made to the Master to ascertain the difference in value, between the estate which Newman took as tenant, by the curtesy and the fee simple title, estimating the latter at eight hundred dollars. It is further ordered, that a commission issue to commissioners to make partition of the estate. And, as two of the defendants had obtained a judgment against the complainants, for the land in question, an enquiry is directed to ascertain this fact, and also whether any damages have been recovered at law, and to what amount; and costs are given against the defendants, except those which

may accrue on the partition, of which the complainant is to pay one third.

If a decree is final, when it ascertains all the rights of the parties in litigation, then this is a final decree. The acts which are to be done, as the decree points out the mode, and settles the principles by which these acts are to be regulated, are in their character, ministerial; subject, to be sure, to the control and supervision of the Chancellor. The decree in this case, even settles the question of costs, and leaves nothing to be done in future, but to carry into effect the principles settled by the decree. If the reference to the Master had been for the purpose of ascertaining some fact, on which to base a decree affecting the rights of the parties, it would be interlocutory in its character. No conceivable object could be attained by a contrary decision, which would only promote litigation and expense.

In the case of Traver's, and others v. Waters, and others, 12 Johns. Rep. 500, a decree almost precisely similar to this, was held a final decree. See also Harrison's Practice, 622 ; 1 Monroe Rep. 137 ; 13 Peter's Rep. 6; and 3 Cranch, 179. Such it may be added, has hitherto been the practice of this Court.

The decree of the Court below, therefore, is reversed; and this Court, proceeding to render such decree as should have been rendered, dismiss the bill, but without prejudice to any action which the complainant may think proper to prosecute on the bond of Newman.