328 So.2d 281

**M. M. MILES**

v.

**BANK OF HEFLIN.**

**SC 1315.**

Supreme Court of Alabama.

Dec. 18, 1975.

Rehearing Denied March 5, 1976.

---

Rives, Peterson, Pettus, Conway & Burge, Birmingham, and James D. Pruett, Gadsden, Rutledge & Pruett, Birmingham, for appellant.

Steiner, Crum & Baker, Montgomery, and John S. Casey, Heflin, for appellee.

JONES, Justice.

This is an appeal from a summary judgment denying M. M. Miles and other stockholders of the Bank of Heflin the 10% penalty provided under Tit. 10, § 21(46) for the refusal of the Bank of Heflin to allow them to inspect its corporate records. We reverse and remand.

The stockholders requested permission for their accountants to examine the books and records of the Bank of Heflin pursuant to Tit. 10, § 21(46). The Bank told them that certain limitations would be placed upon their access to the Bank's records. Among the things the Bank wanted to prevent the stockholders from inspecting were financial statements of borrowers, reports of examinations of the Bank by federal and state regulatory authorities, and information which would disclose the salaries paid to individual employees of the Bank. To limit the scope of inspection, the Bank filed a declaratory judgment action. The stockholders filed a counterclaim for the statutory 10% penalty. Both parties filed motions for summary judgment upon affidavits and depositions.

The trial Court agreed with the Bank that the inspection should be limited and appointed a Master to determine the scope of permissible inspection. The Court then granted the Bank's motion for summary judgment against the stockholders' counterclaim for the penalty. The stockholders brought mandamus to enforce their right to full inspection of the records and filed

an appeal to review the summary judgment denying the penalty. A writ of mandamus requiring the trial Court to order the Bank to permit full inspection was granted on August 21, 1975, in *Ex parte Miles,* 294 Ala. 462, 318 So.2d 697 (1975). The case now before us is the appeal from the summary judgment on the penalty. The Bank has filed a motion to dismiss the appeal.

There are two issues for review. First, whether the Bank's motion to dismiss the stockholders' appeal is due to be granted. Second, if the appeal is not dismissed, whether the trial Judge erred in granting a summary judgment against the stockholders' counterclaim for the statutory penalty.

### I.

#### On the Motion to Dismiss Appeal

The Bank contends that the stockholders are attempting to appeal from an incomplete adjudication of the case below. It contends that ARCP 54(b) prevents the appeal because, when the stockholders appealed, the trial Judge had entered a judgment only upon the counterclaim for the penalty, and the trial Judge had not made "an express determination that there is no just reason for delay and an express direction for the entry of judgment." ARCP 54(b).

This Court, in *Cates v. Bush,* 293 Ala. 535, 307 So.2d 6 (1975), discusses the effect of Rule 54(b) and is relationship to Alabama's prior statutory provisions for appeal and holds that Rule 54(b) neither superseded, nullified, nor modified Tit. 7, § 754, Code, relating to the finality of judgments. *Cates* further observes, "Title 7, Section 754, provides that, except in unusual circumstances, appeal must be only from a final judgment. Rule 54(b) merely sets out one instance where a judgment may now be made final although it would not have been final prior to the adoption of

the new rules." Therefore, to determine whether the stockholders' appeal should be dismissed, we must not confine our inquiry to the language of Rule 54(b), but we must look to all applicable Alabama law.

Our inquiry must begin with a review of the procedural posture of this case at the time of the stockholders' appeal. The order of the trial Judge, the subject of this appeal, primarily did two things. First, it denied the stockholders' demand for unlimited inspection and appointed a "Special Master" to inspect the Bank's records to determine which records the stockholders should be allowed to inspect. Second, it granted the Bank's motion for summary judgment on the counterclaim for the statutory penalty.

The stockholders brought mandamus to compel full inspection and brought appeal to revise the order denying the statutory penalty. A writ of mandamus was granted in *Ex parte Miles, supra.* The rationale for granting mandamus in that case was that the stockholders were being denied "a clear legal right, the allowance of which is a matter of peremptory duty, and not of judicial discretion," citing *Ex parte Watters,* 180 Ala. 523, 61 So. 904 (1913), and *Ex parte Weissinger,* 247 Ala. 113, 22 So. 2d 510 (1945).[1]

Granting mandamus, says the Bank, on the issue of inspection operates to preclude the instant appeal under Rule 54(b). The Bank contends, by granting mandamus, this Court acknowledged that the entire case had not been fully adjudicated below; therefore, the appeal on the penalty is an appeal from a nonfinal judgment; and, without the express direction for entry of judgment under Rule 54(b), it is due to be dismissed. We disagree.

Our holding that mandamus was proper in *Ex parte Miles, supra,* did not necessari-

---

1. Moreover, it has long been recognized that mandamus is the appropriate remedy whenever a board of directors refuses its stockholders the right to inspect corporate records. *Ala-* *bama Gas Corporation v. Morrow,* 265 Ala. 604, 93 So.2d 515 (1957), and *Loveman v. Tutwiler Inv. Co.,* 240 Ala. 424, 199 So. 854 (1941).

ly mean that appeal was not also available. It only meant that appeal was not adequate because of the exigencies of the situation and because of the peremptory, nondiscretionary duty violated by the trial Judge. To determine whether appeal is proper in the instant case, it is necessary to determine whether the trial Judge's order, in all its component parts, was appealable when he entered it. If it were appealable at that time, then the "express determination" and "express direction" requirements of Rule 54(b) are unnecessary. *Cates v. Bush, supra.*

We hold that the trial Judge's order appointing a Master to determine which records the stockholders could properly inspect is a final judgment for purposes of appeal; therefore, the summary judgment on the penalty is not a partial judgment and it is appealable without a Rule 54(b) determination and direction.

A large body of case law has developed around the problem of when an order which refers part of a case to a register or master is a final judgment. *Chadwick v. Town of Hammondville,* 270 Ala. 618, 120 So.2d 899 (1960). The first Alabama cases on the problem are now over 130 years old and their rules have been followed consistently. The earliest statement is "that a decree 'is final when it ascertains all the rights of the parties in litigation,' although there may be a reference to the master to ascertain facts for an account between the parties." *Bank of Mobile v. Hall,* 6 Ala. 141 (1844), and *Weatherford v. James,* 2 Ala. 170 (1841).

The rule arose in equity jurisprudence because old Equity Rules 79 through 88 were the only effective vehicle for appointing masters prior to the adoption of the Alabama Rules of Civil Procedure. As the equity rule developed, it was broadened to apply to various equity situations. The most common statement is, "The test of the finality of a decree sufficient to support an appeal is that it ascertains and declares the rights of the parties and settles the equities, and is not controlled by the fact that the cause remains in fieri in respect to other matters." *McCulloch v. Roberts,* 290 Ala. 303, 276 So.2d 425 (1973); *Moorer v. Chastang,* 247 Ala. 676, 26 So.2d 75 (1946); *Carter v. Mitchell,* 225 Ala. 287, 142 So. 514 (1932).

ARCP 53 has now superseded old Equity Rules 79 through 88, and ARCP 2 has merged the procedural distinction between law and equity into one form of action—the "civil action". Rule 53 provides for reference to a master in any civil action in which the presiding judge finds it necessary. It is now incumbent upon this Court to determine whether the equity case law allowing appeal after a reference to master should be extended to the Rule 53 situation. The rationale for the equity rule was articulated in one of the early cases. That rationale is: If the chancellor has erroneously ascertained the merits of the case, the delay, expense, and trouble attending the ascertainment of facts and preparation of a report by the master are unnecessary and profitless. *Bank of Mobile v. Hall, supra.*

We find that the policy articulated by this Court in *Bank of Mobile* case is as applicable today as it was in 1844. Rule 53(a) provides that "the compensation to be allowed to a master shall be fixed by the court, and shall be charged upon such of the parties . . . as the court may direct." In the instant case, the Court ordered the Bank of Heflin, Miles, and the Woods to pay $400 each to defray expenses of the Master. If it is determined that the trial Judge adjudicated all of the merits of the case, and the stockholders were going to appeal regardless of the content of the Master's report, it would be "unnecessary and profitless" for them to await the Master's report before appealing. This is the same situation this Court faced when appeals were brought from equity trials after reference to a master and the same rule must apply here.

We now address the question of whether the instant case falls within the scope of the rule allowing appeal from orders which include references to masters. The purpose of this inquiry, it must be remembered, is not to determine the propriety of our granting mandamus in *Ex parte Miles, supra,* but rather, it is to determine whether the trial Judge's order constituted a final judgment in all of the claims, thereby taking this case beyond the scope of Rule 54(b). The mere fact that the Court has ordered a reference to a Master is not, of itself, sufficient to make out a final judgment for purposes of appeal. It is also necessary that the trial Judge has decided "the substantial merits of the controversy—the material issues of fact and law litigated or necessarily involved in the cause, which determine the legal rights of the parties, and the principles by which such rights are to be worked out." *Adams v. Sayre,* 76 Ala. 509 (1884).

In the instant case, we can determine what material issues of fact and law are involved in the controversy from the pleadings of the parties. The Bank's complaint prayed that the Court set forth in detail the books, records of account, memoranda, and other information that the stockholders were entitled to see, but that it deny the stockholders access to confidential information and information held by the Bank in its fiduciary relationship with its customers. The stockholders' answer denied that the Bank had a right to withhold any records from stockholder inspection based on its claim of confidential relationship and prayed that the Court direct the Bank to immediately make available all of its books and records of account for their examination.

In its order, the Court found:

(1) That the Bank's fiduciary relationship and duty to its customers did place limitations upon the access to all writings or records of the Bank.

(2) That the stockholders could not have access to the individual files and memoranda from which the books and records are prepared.

(3) That the Bank should not reveal such things as amount on deposit or savings of customers, individual certificates of deposit, and private memoranda of customers.

After making these findings, the Court referred the matter to a Special Master who was directed to return a report specifying which of the Bank's records did not fall within the category of confidential information and were, therefore, available for inspection.

When the Court made its findings and issued its decree in accordance therewith, including reference to the Master, it adjudicated the substantial merits of the controversey. It granted the Bank's request to limit the inspection and denied the stockholders' demand for complete inspection. All that remained was for a Master to determine exactly which of the Bank's records fell within the prohibited category. Regardless of what the Master reported, he could not have broadened, or otherwise enlarged upon, the limited right of inspection as decreed by the Court. Thus, the stockholders lost their case on the merits and their right of appeal necessarily accrued at that time. Indeed, had the stockholders awaited the Master's report, they would have risked the running of the statutory period for appeal. *O'Rear v. O'Rear,* 227 Ala. 403, 150 So. 502 (1933).

This situation falls exactly within the policy behind allowing appeals, under certain circumstances, from reference to masters. We find that it would have been "unnecessary and profitless" for the stockholders to have awaited the Master's report to appeal; and we hold that, under the *adjudication of substantial merits rule* set out in *McCulloch,* the order appointing the Master was final and would have sup-

ported an appeal. Therefore, the stockholders' appeal from the summary judgment entered against their counterclaim for the statutory penalty is not an appeal from a nonfinal judgment and it is not due to be dismissed. Motion to dismiss the appeal is denied.

## II.

### On the Merits of the Appeal

The trial Judge granted the summary judgment and dismissed the stockholders' counterclaim because he found that "the filing of the declaratory judgment action does not constitute a refusal or denial of the records." Our review of the trial Court's order granting a motion for summary judgment requires us to address two issues.

First, whether the trial Judge's decision is legally correct. Second, whether affidavits and depositions of the parties show there was no genuine issue of material fact as required by Rule 56(c).

■ On the first issue, we must decide whether a declaratory judgment filed by a corporation to limit stockholders' inspection of corporate records is a "refusal" of the stockholders' demand as a matter of law. The purpose of the statutory penalty is to make corporate records more accessible to stockholders. If there were no penalty, the usual course for a stockholder seeking inspection would be to file suit to enforce his right. The expense of such litigation would discourage many stockholders from pursuing their rights. The penalty forces a corporation to assume financial responsibility for its refusal.

If we were to hold that filing of declaratory judgment action was not a refusal as a matter of law, then the Board of Directors can easily circumvent the penalty provision while still putting the stockholders to the expense of litigation to enforce their inspection rights. By rendering the penalty provision, inoperative, declaratory judgment actions would shield the Board from the demands of those stockholders who cannot afford to pursue litigation.

Therefore, we cannot agree that filing a declaratory judgment action is not a refusal to allow inspection. The fact that the Board of Directors, rather than the stockholders, has instituted the litigation cannot exonerate the Board of its duty to allow inspection. We therefore hold that when the Board forced the stockholders to litigate in order to pursue their rights, it effectively refused to allow inspection.

The remaining issue for liability under the penalty statute is whether the Bank's refusal to allow full inspection of its books and records was "without reasonable cause." Tit. 10, § 21 (46). Ordinarily, this question of reasonable cause is a disputed factual issue to be determined with reference to the facts and circumstances in each case.[2] As the Committe Comments to Rule 56 state: "The summary judgment procedure is not a substitute for the trial of disputed issues of fact. On a motion for summary judgment, the court cannot try issues of fact." 10 Wright and Miller, *Federal Practice and Procedure*, § 2712.

The posture of the record in the instant case, however, reveals an *out of the ordinary* situation. Following responsive pleadings, including counterclaims for the statutory penalty, filed by the stockholders to the Bank's Bill for Declaratory Judgment, each of the parties, with supportive affidavits and depositions, moved the Court for summary judgment. Understandably, when the trial Court denied the stockholders the right of full inspection, it likewise denied their motions for summary

---

2. For an in depth discussion of the objective test applicable to the statutory requirements that the examination of the books and records by a stockholder be for a "proper purpose" and that the, penalty be imposed for an officer's refusal of such examination "without reasonable cause", see *Smith v. Flynn*, 275 Ala. 392, 155 So.2d 497 (1963).

judgment and, consistent therewith, granted the Bank's motion for summary judgment. This had the effect of dismissing the stockholders' counterclaims.

Unquestionably, had the trial Court denied the Bank's sought for relief limiting the stockholders' right of full inspection, it likewise would have denied the Bank's motion for summary judgment. *Ex parte Miles,* supra, revised the trial Court's order denying full inspection on the basis of the clear and nondiscretionary mandate of the statute. Moreover, the right of a stockholder, within reasonable limits and for proper purposes, to inspect the books and records of the corporation in which he owns an interest, absent a contract to the contrary, is hardly dependent upon legislative expression. Indeed, any effort to statutorily limit such right by arbitrarily excluding certain books and records from the scope of full inspection would raise serious constitutional questions.

Given the revision of the trial Court's order denying full inspection affected by *Ex parte Miles,* and given our ·conclusion that in the context here presented the Bank's filing of a declaratory judgment action was an effective denial of the stockholders' request for such inspection, we necessarily must reverse the order below granting the Bank's motion for summary judgment and dismissing the stockholders' counterclaims. This is not to say that the Bank's mere filing of a declaratory judgment action in itself is an effective denial of the right of inspection. Rather, we say that the basis for the denial was the defense of confidentiality and upon that basis there was an effective denial of the right of inspection resulting in the right to recover the statutory penalty under Tit. 10, § 21(46).

The only basis for the Bank's refusal is summed up in its President's deposition when he states that the Bank's confidential relationship with its customers made a declaratory judgment action reasonable, and thus its refusal was *with* reasonable cause. Since this constitutes˙ a legal contention merely, which has been rejected by *Ex parte Miles* and the instant appeal, the trial Court is directed on remand to grant the stockholders' motions for summary judgment and assess against the Bank in favor of each stockholder respondent a penalty equal to 10% of the value of the stock owned by each respective stockholder.

Reversed and remanded with instructions.

MERRILL, BLOODWORTH, MADDOX, FAULKNER, ALMON and EMBRY, JJ., concur.

SHORES, J., concurs specially.

HEFLIN, C. J.,, not sitting.

SHORES, Justice (concurring specially):

I agree with the result and agree that Rule 54(b), ARCP, has no application since, in my view, the order entered by the trial court, granting the bank's motion for summary judgment and limiting the appellants' right to full inspection, was a judgment which was final and therefore appealable.

As to these appellants, stockholders, the ruling of the trial court could not have been more adverse, nor final. The ruling denied every aspect of relief which they sought without reservation. It was their contention that they were entitled to full inspection of the records of the bank. The appointment of a master to select what parts of those records could be inspected was, as far as the stockholders were concerned, a denial of their claim of right to inspect all of the records. Regardless of what the master produced, it would necessarily be less than they sought to inspect. Therefore, I think appeal was proper and that the method of review should have been utilized to test the pro-

priety of the trial court's refusal to permit full inspection of the records. The fact that the court has granted a petition for writ of mandamus, as to the right to inspect, does not destroy the finality of the judgment entered and appealed from here, but candor requires us to admit that piecemeal review has been the result.

## On Rehearing

This Court notes that the Bank has retained new counsel who has filed an extensive brief in support of its application for rehearing. For that reason, we feel constrained to file an extended written opinion, addressing the important points raised in the application.

The arguments urging our modification of the original opinion fall into three categories:

1. The trial Court did not consider the stockholders' motion for summary judgment on their counterclaim for the penalty; therefore, the issue was not before this Court for review.

2. Regardless of whether the trial Court considered the stockholders' motion, this Court erroneously remanded the cause with instructions to enter a summary judgment in favor of the stockholders because the questions of the stockholders' "proper purpose" and the Bank's "reasonable cause" for refusal are issues for trial, and because the stockholders did not assign as error the trial Judge's denial of their motion for summary judgment.

3. The 10% penalty prescribed by Title 10, § 21(46), is a maximum figure, not an absolute standard; therefore, the trial Court is authorized to set the penalty on a continuum up to 10%.

We will address each of these arguments separately.

First, the record sets out the stockholders' motion for summary judgment on their counterclaim for the penalty. The motion is accompanied by affidavits which include the stockholders' letters to the Bank demanding inspection of books and records and the depositions of the Bank's stockholders, president, attorney, and public relations officer. The trial Judge's order is prefaced with the following statement: "This is a declaratory judgment and is submitted on motions by the respective parties for a summary judgment on the pleadings, affidavits and depositions on file in this case." There is no order in the record striking the stockholders' motion for summary judgment and whether the trial Judge, in fact, did consider the motion is not material to this Court's review of the trial Court's propriety in not granting it.

■ Where the parties have moved for summary judgment under Rule 56 and submitted supporting affidavits, which establish that there is no genuine issue of material fact, appellate courts are authorized to remand the case with instructions for entry of summary judgment. *Sayre v. City of Cleveland,* 493 F.2d 64 (6th Cir. 1974). We therefore find no merit in the Bank's first argument.

■ The Bank's second argument is that determinations of "proper purpose" and "reasonable cause" were genuine issues of material fact. *Smith v. Flynn,* 275 Ala. 392, 155 So.2d 497 (1963), explains that the burden is on a corporation to prove improper purpose; therefore, if the corporation does not question the stockholders' purposes, there is no issue for trial. The stockholders' demand for inspection alleged proper purposes such as inquiries into: misuse of corporate funds, the abuse of corporate office, the diversion of corporate assets to the personal benefit of any officer, director, employee or stockholder, and the favoring of certain customers of the Bank because of their personal connections with the officers or directors. The deposi-

tions of the stockholders which accompanied their motion for summary judgment set forth specific occurrences which made them suspect corporate mismanagement. Two examples of the suspected mismanagement were the Bank's purchasing land from a board member at more than its market value and the Bank's making a substantial loan to a board member who could offer only a second mortgage as security.

The Bank offered no affidavits to establish improper purpose. Rule 56(e), in pertinent part, provides:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The last sentence of 56(e) has been interpreted to mean that even if the adverse party files no affidavits opposing the motion, a summary judgment can be entered against him only if "appropriate." *Dawkins v. Green,* 412 F.2d 644 (5th Cir. 1969). We hold that this is an appropriate case for the entry of summary judgment for two reasons. First, the president of the Bank on direct examination by the stockholders' attorney admitted that he had no reason to believe that Mr. Miles had some purpose for asking to see the records other than to determine the way the bank had been operated. Second, the burden is on the corporation to prove that the stockholders' demand is not for a proper purpose. *Smith v. Flynn,* supra. Therefore, if the Bank offers no evidence of improper purpose and in fact admits through its president that there is no reason to suspect improper purpose, the question of purpose is not an issue for trial.

On the "reasonable cause" issue, again, the burden rests with the corporation. The trial Judge found that the peculiar fiduciary relationship between a Bank and its customers created a reasonable cause for the Bank's refusal to permit inspection. This Court, however, reversed that finding in *Ex parte Miles,* 294 Ala. 462, 318 So.2d 697 (1975), holding that the inspection rights of stockholders of a bank are the same as stockholders of a corporation generally. Thus, *Ex parte Miles* finally resolved the question of "reasonable cause", and that issue is not before the trial Court on remand. Since all of the triable issues —issues of law, not of fact—are resolved in this Court, the only proceeding remaining for the trial Court is to grant a summary judgment in favor of the stockholders. *Millworth Converting Corp. v. Slifka,* 188 F.Supp. 629 (S.D.N.Y.1960).

As to the propriety of our instructions to grant a summary judgment, the Bank argues that the issue of the trial Judge's denial was not before this Court on appeal because it was not assigned as error. Our instruction, however, is not grounded upon a reversal of the trial Judge's erroneous denial of the stockholders' motion for summary judgment. Rather, our instruction is an acknowledgement that the trial Judge correctly found that there were no triable issues. Our authority for the instruction is not the rules of appellate procedure, as the Bank assumes, but rather the mandate of Rule 1 of ARCP. Rule 1 requires that the rules "shall be construed to secure the just, speedy and inexpensive determination of every action." Since the material issues of this case have been disposed of by the affidavits of the parties, by *Ex parte Miles,* and by our original opinion, a trial is unnecessary.

This situation falls squarely within the purpose of Rule 56 to "improve the machinery of justice, promote the expeditious disposition of cases, and avoid unnecessary trials where no genuine issues of fact are

raised." 10 Wright and Miller, *Federal Practice and Procedure*, § 2712 (1973). Where there are no triable issues of fact, as here found by the trial Court and with which finding we agree, and the legal issue presented has been resolved against the Bank, our mandate on reversal for the entering of a summary judgment in favor of the stockholders necessarily follows.

■ Finally, the Bank takes issue with the latter portion of the last sentence of our original opinion: ". . . and assess against the Bank in favor of each stockholder respondent a penalty equal to 10% of the value of the stock owned by each respective stockholder." Of the three points raised, the first two were treated, at least to some degree, in the original opinion. While, in deference to counsel's earnest insistence, we have not considered the first two points lightly, it is this 10% penalty issue—treated only summarily in the original opinion—to which we have devoted the most time and effort in our consideration of this cause on rehearing.

We find ourselves in substantial agreement with the policy arguments advanced by counsel for the Bank that the penalty should be *up to 10%* with guidelines for the discretionary fixing of the amount according to the gravity and circumstances of the wrong for which the penalty is imposed. To eliminate all discretion and require the imposition of the penalty by an absolute standard, says counsel for the Bank, treats all refusals to allow inspection of corporate books and records, not sustained on "improper purpose" grounds, as equal in degree and severity. It would further encourage refusal to a relatively small stockholder as opposed to the request of a large stockholder where the risk of refusal would prohibit a contest even in legitimate "improper purpose" cases. Our prerogatives on appellate review, however, do not extend to policy making but rather to judicially interpreting the legislative policy.

The primary authority cited by the Bank in support of its proposition that the penalty statute should be interpreted as a maximum rather than an absolute standard is the case of *McCormick v. Statler Hotels Delaware Corporation*, 55 Ill.App.2d 21, 203 N.E.2d 697 (1964). In upholding a penalty award of less than 10% under an identical statute, this intermediate appellate court observed:

". . . the statute says an officer or corporation, '. . . shall be liable . . . in a penalty of ten per cent of the value of the shares owned by such stockholder. . . .' The question here is the meaning of 'shall be liable.'

". . . The [Illinois] Supreme Court said in that case [*People v. Elgin Home Protective Ass'n*, 359 Ill. 379, 194 N.E. 584 (1935)], 'The words "may" and "shall," when used in a statute, will sometimes be read interchangeably, as will best express the legislative intent.' On this basis, it is possible for us to find that the imposition of a penalty rests in the discretion of the Court below.

"We can reach this same result through interpreting the word 'liable.' Being liable for a ten per cent penalty could mean the defendants are subject to a fine up to ten per cent of the value of the stock . . . ."

We cannot accept either basis for interpreting "shall be liable . . . in a penalty of ten per cent . . ." as permitting a discretionary penalty imposition not to exceed 10%. The interchangeability of "may" and "shall" to effect legislative intent is a sound rule; but it can be given a field of operation only where the overall expression of the legislative enactment evidences an intent and purpose contrary to the term employed. See *Morgan v. State*, 280 Ala. 414, 194 So.2d 820 (1967). Here, no contrary intent which permits "may" to be substituted for "shall" is manifest.

Perhaps the word "liable" could be interpreted as subject to a fine *up to* 10% (one

of its secondary meanings being "likely to") except that it is preceded by the words "shall be." To be subject to a "likely to" connotation, the sentence would read, "A corporation is liable to a fine of 10%." This interpretation is precluded, however, by the phrase "shall be liable . . . in a penalty of 10%," particularly where this is the only expression of legislative intent and its mandatory imposition is in harmony with the overall spirit of the "right of stockholders to inspect corporate records" statute.

Opinion extended and application for rehearing overruled.

All the Justices concur, except HEFLIN, C. J., not sitting.