THOMPSON, Presiding Judge.
John Linowiecki appeals from two judgments in favor of Melissa Nichols, both of which involved disputes that arose from the administration and settlement of the estate of Linda Ann Marie Linowiecki (“the estate”). Linda Ann Marie Linow-iecki (“Linda”), also known as Linda Ann Marie Curtiss, was Linowiecki’s wife and Nichols’s mother.
The record indicates that Linda’s will was admitted to probate in the Baldwin County Probate Court (“the probate court”) in October 2007, and letters testamentary were issued to Linowiecki. In January 2010, Linowiecki filed a petition for final settlement in the probate court. In March 2010, Nichols objected to the petition for final settlement on the ground that Linowiecki had failed to file an account and written evidence supporting the account, both of which, she said, are required to make a settlement of an administration, pursuant to § 43-2-502, Ala.Code 1975.[1] On July 30, 2010, Nichols filed a petition to remove the proceedings regarding the administration of the estate from the probate court to the Baldwin Circuit *1084 Court (“the circuit court”). On August 12, 2010, the circuit court granted the petition, and the administration of the estate was removed from the probate court to the circuit court, where it was assigned civil action number CV-10-901437 (“the estate case”).
On December 15, 2010, Nichols filed a separate action in the circuit court alleging claims of negligence, fraud, suppression, and breach of fiduciary duty against Li-nowiecki in connection with his administration of the estate. That action against Linowiecki was assigned civil action number CV-10-902225 (“the civil action”). In May 2011, Nichols moved to consolidate the civil action and the estate case. On July 26, 2011, the circuit court entered an order stating that the civil action and the estate case were consolidated for the purposes of discovery and trial only. In October 2011, Linowiecki filed a counterclaim against Nichols in the civil action, alleging claims of unjust enrichment and money owed, and he sought an attorney fee and expenses pursuant to the Alabama Litigation Accountability Act, § 12-19-270 et seq., Ala.Code 1975.
The trial of the consolidated actions was scheduled for March 2, 2012. On that day, the parties announced that they had reached a settlement, and the agreement was read into the record. On March 23, 2012, the circuit court entered judgments based on the agreement of the parties in each of the actions. The terms set forth in the judgments were identical. They provided, among other things, that Linow-iecki, as the personal representative of the estate, “is surcharged in the amount of $180,074.36 for failing to account for money received in his fiduciary capacity.” Li-nowiecki also was “surcharged” an attorney fee in an amount equal to 11% of the sales price of certain specified real property (“the property”) in Baldwin County. The judgments stated that Nichols and Linowiecki equally owned the property as tenants in common, and the property was to be sold as soon as possible. Linowiecki was awarded the right to occupy the property until April 13, 2012. The judgments provided that, while he was occupying the property, Linowiecki would be solely responsible for paying the cost of utilities, maintenance, and taxes. After Linowiecki vacated the property, the judgments said, Nichols and Linowiecki were each to pay half of those costs. Linowiecki was responsible for paying the mortgage on the property until the property was sold.
Also on March 23, 2012, Nichols filed a motion to compel compliance with the court’s “consent judgment and final order” of March 23, 2012, and seeking to have Linowiecki held in contempt.
On March 26, 2012, Linowiecki filed a motion to alter, amend, or vacate the judgments. Two days later, on March 28, 2012, he filed a suggestion of bankruptcy in both cases. That same day, the circuit court entered an order staying all pending matters in both cases. On May 17, 2012, Linowiecki’s bankruptcy petition was dismissed, and Nichols filed a motion to lift the stay and to set a hearing on her motion for contempt. Linowiecki requested that the stay be lifted on July 24, 2012, and on July 27, 2012, he filed an amended motion to alter, amend, or vacate the judgments of March 23, 2012. The circuit court entered an order purporting to grant Linowiecki’s motion to lift the stay on August 2, 2012.[2] On that day, the circuit court also entered an order purporting to hold in abeyance Linowiecki’s motions to alter, amend, or vacate the judgments until *1085 after the sale of the real property that Linowiecki and Nichols owned jointly after Linda’s death. After that property sold, the circuit court said, all pending motions would be heard. Also on August 2, 2012, the circuit court appointed a real-estate agent for the purpose of selling Linda’s house, where Linowiecki had been living, as provided in the March 23 judgments.
On August 3, 2012, Linowiecki appealed to the Alabama Supreme Court from the judgments entered in both cases.[3] Our supreme court transferred the appeals to this court pursuant to § 12-2-7(6), Ala. Code 1975. This court consolidated the appeals on August 21, 2012.
Linowiecki asserts that the circuit court erred in refusing to alter, amend, or vacate the March 23 judgments because, he said, they did not comply with the terms of the settlement the parties had reached. He argues that he “had a right to expect that the only terms embodied in the consent order in this case would be the terms upon which there was a meeting of the minds of the parties.” Specifically, Linowiecki challenges the language in the consent judgments that he says assigns fault to him and that “makes him responsible for insuring that all terms of the mortgage are complied with such that it does not go into default,” rather than simply making him responsible for making the mortgage payments. Linowiecki also says that, although the circuit court purported to certify the consent judgments as final pursuant to Rule 54(b), Ala. R. Civ. P., the parties did not make that a part of the agreement and that the court added that language “out of the blue.”
Before addressing Linowiecki’s arguments, we note that, as to the propriety of the Rule 54(b) certifications on the merits, that is, as opposed to Linowiecki’s contention that such certification was not a term of the parties’ settlement agreement,
“it is well settled that a judgment in equity need not decide all details of the matters between the parties to be a final judgment; instead, the judgment is final if ‘ “it ascertains and declares the rights of the parties and settles the equities.” ’ McCulloch v. Roberts, 290 Ala. 303, 305, 276 So.2d 425, 426 (1973) (quoting Carter v. Mitchell, 225 Ala. 287, 293, 142 So. 514, 519 (1932)). As explained in McCulloch, the determination of finality ‘ “is not controlled by the fact that the cause remains in fieri in respect to other matters.” ’ McCulloch, 290 Ala. at 305, 276 So.2d at 426 (quoting Carter, 225 Ala. at 293, 142 So. at 519). As further explained in Sexton v. Sexton, 280 Ala. 479, 482, 195 So.2d 531, 533 (1967):
“ ‘Equity decrees may be partly final and partly interlocutory. A decree which ascertains and declares the rights of the parties and settles the *1086 equities is a final decree, although it provides for further proceedings under the direction of the court in order to make the final decree effective, such decree is interlocutory and remains within the control of the court because as to such decree and further proceedings thereunder the cause remains in fieri.’
“This rule survived the merger of law and equity and the adoption of the Rules of Civil Procedure. Miles v. Bank of Heflin, 295 Ala. 286, 290, 328 So.2d 281, 284-85 (1976) (applying the rule set out in McCulloch to determine that a judgment in which the trial court ordered reference to a special master for certain determinations was, in fact, a final judgment that would support an appeal and discussing the application of Rule 53, Ala. R. Civ. P., and the fact that the merger of law and equity did not prevent application of the long-recognized rule that equity judgments may be final despite leaving other matters for later determination).”
Antoine v. Oxmoor Preservation/One, LLC, [Ms. 2100839, July 20, 2012] - So.3d -, - (Ala.Civ.App.2012).
In this case, the consent judgments declared the rights of the parties and settled the equities. The circuit court retained jurisdiction to conduct further proceedings to oversee the sale of the property, that is, to make the final judgments effective. Accordingly, we conclude that the consent judgments were final for purposes of appeal and that the Rule 54(b) certifications were unnecessary.
Additionally, we must address Nichols’s contention that the circuit court did not have jurisdiction to consider the arguments raised in Linowiecki’s amended motion to alter, amend, or vacate the consent judgments. Linowiecki’s original motion to alter, amend, or vacate asserted that the consent judgments contained language assigning blame, which, he says, was not part of the parties’ settlement agreement. The amended motion, filed on July 30, 2012, includes the other objections Linowiecki raises on appeal. Nichols contends that the original postjudgment motion, filed on March 26, 2012, was denied by operation of law on June 25, 2012. See supra note 3. Therefore, she says, the circuit court no longer had jurisdiction to consider the issues raised in the amended motion, filed more than one month after the original postjudgment motion had been deemed denied.
The parties disagree over the application of 11 U.S.C. § 108(c), which provides for extensions of deadlines in nonbankruptcy cases when bankruptcy stays have been lifted. Linowiecki argues that when he filed for bankruptcy on March 28, 2012, and the circuit court entered the stay pursuant to 11 U.S.C. § 362, the 90-day period in which the circuit court had jurisdiction to rule on his postjudgment motion pursuant to Rule 59.1, Ala. R. Civ. P., was suspended while his bankruptcy case was pending. The bankruptcy case was dismissed on May 17, 2012. Therefore, Li-nowiecki argues, the calculation of the 90-day period the postjudgment motion remained pending should be extended by the 51 days the bankruptcy case was active. Therefore, Linowiecki says that by his calculation, only six of the 90 days the circuit court had to rule on the postjudgment motion had passed at the time he filed the amended postjudgment motion on July 30, 2012, meaning the circuit court still had jurisdiction to consider the amended post-judgment motion.[4]
*1087 On the other hand, Nichols argues that § 108(c) does not provide for the tolling of the 90-day period a postjudgment motion may remain pending; instead, she says, that statute imposes deadlines that would take affect if the time for ruling on the postjudgment motion had expired during the pendency of the bankruptcy action or less than 80 days after the dismissal of the bankruptcy action. She argues that because, under Rule 59.1, the 90-day period for ruling on Linowieeki’s postjudgment motion expired on June 25, 2012, which was more than 30 days after the bankruptcy case was dismissed, the time for ruling on the postjudgment motion was not affected by the bankruptcy stay.
Section 108, which is part of the Bankruptcy Code, provides, in relevant part:
“(c) ... if applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
“(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
“(2) 80 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.”
The vast majority of caselaw discussing § 108(c) — whether from Alabama or from other jurisdictions — deals with the suspension of statutes of limitations in cases against debtors. Our research indicates that no Alabama appellate court has considered the issue whether § 108(c) acts as a tolling mechanism in the manner contemplated by Linowiecki in these cases. However, the jurisdictions that have considered the issue appear to have rejected Linow-iecki’s reading of § 108(c). Regarding the time in which a plaintiff may commence an action against a debtor after a bankruptcy stay has been lifted, the United States District Court for the Middle District of Alabama stated that § 108(c) “grant[ed] the plaintiff either the remainder of the statute of limitations, or thirty days after the plaintiff received Notice of Dismissal.” Wombles v. Hagans, (No. 3:12-cv-532-TFM, Nov. 14, 2012) (M.D.Ala.2012) (not published in F.Supp.2d). In other words, under Wombles, § 108(c) does not extend an applicable statute of limitations by the length of time a debtor is under bankruptcy protection. See also Thurman v. Tafoya, 895 P.2d 1050, 1054-55 (Colo.1995).
The United States Court of Appeals for the Second Circuit has held:
“Commencing with the plain meaning, we observe that by its terms § 108(c) does not provide for tolling of any externally imposed time bars, such as those found in the two maritime statutes of limitations. The bankruptcy section only calls for applicable time deadlines to be extended for 30 days after notice of the termination of a bankruptcy stay, if any such deadline would have fallen on an earlier date.”
Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1073 (2d Cir.1993).
In discussing the application of § 108(c) to a postjudgment deadline, a Texas appellate court wrote:
“By its express terms, section 108(c) tolls no time limits, but provides only for some deadlines to be extended for 30 days after notice of the termination of a bankruptcy stay. [§ 108(c) ]. Beyond this, a time period may be further suspended only if mandated by other federal or state law incorporated through section 108(c). Section 108(c) thereby anticipates and provides for the *1088 expiration of periods for commencing or continuing civil actions during bankruptcy stays; and an interpretation of that section as tolling such periods would render its 30 day extension of time largely meaningless. See Thurman v. Tafoya, 895 P.2d 1050, 1056 (Colo.1995). Because Carol has cited, and we have found, no authority that section 108(c) tolls our post-judgment or appellate timetables, and because other Texas appeals courts have held that section 108(c) does not do so (but provides only a residuary 30-day extension of time), we have no basis to conclude otherwise.
“In this case, from the time the bankruptcy petition was filed in November of 1996 until the stay was lifted on March 28, 1997, all remaining post-judgment time periods (relevant to this appeal) had expired. When the stay was then lifted, section 108(c)(2) gave Carol another thirty days (until April 27, 1997) to either perfect her appeal or take such other action to continue the lawsuit as for which the time period had not expired on November 5, 1996 when the stay commenced. Because she failed to take any such action within that 30 day period, her subsequent filings in the trial court did not extend the time for perfecting appeal, and her notice of appeal was not timely and did not invoke the jurisdiction of the Corpus Christi Court of Appeals.”
Gantt v. Gantt, 208 S.W.3d 27, 30-31 (Tex.App.2006) (footnotes omitted).
Linowieeki has cited no authority to support his reading of § 108(c), and our research has not disclosed any authority tending to support Linowiecki’s position. Based on the caselaw cited above, we agree with Nichols that § 108(c) did not provide the circuit court with an additional 51 days in which to rule on Linowiecki’s postjudgment motion before that motion was deemed denied by operation of law. The bankruptcy stay did not toll the 90-day period in which the circuit court properly could consider Linowiecki’s original postjudgment motion. Instead, pursuant to § 108(c), the 90-day period in which the circuit court could consider the post-judgment motion expired on either the date it would naturally expire — in this case, June 25, 2012 (see supra note 3) — or 30 days after notice that the bankruptcy case had been dismissed, whichever came later. The record indicates that the parties received that notice on May 17, 2012; 30 days later would have been Saturday, June 16, 2012. Because the natural expiration of the Rule 59.1 90-day period was later than the 30-day period allowed by § 108(c), Linowiecki’s bankruptcy stay did not confer on the circuit court any additional time in which to consider the post-judgment motion before it was deemed denied as a matter of law on June 25, 2012. Accordingly, we agree with Nichols that the circuit court was without jurisdiction to consider the amended motion to alter, amend, or vacate the consent judgments. See Alabama Farm Bureau Mut. Cas. Ins. Co. v. Boswell, 430 So.2d 426, 428 (Ala.1983) (“[T]he trial court has discretion to allow an amendment to a motion for new trial to state an additional ground after thirty days from the final judgment, if the original motion was timely filed and is still before the court when the amendment is offered.” (some emphasis added)). Therefore, we will not consider the issues that were raised only in the amended motion that are now argued before this court.[5]
*1089 As mentioned above, in the original motion to alter, amend, or vacate the consent judgments, Linowiecki asserted that the consent judgments improperly “insinuate[d]” that each was a “judgment for negligence, wantonness, intentional breach of duty, fraud, suppression and sale for division.” On appeal, Linowiecki argues that, in entering the consent judgments, the circuit court improperly assigned fault to him and improperly entered the judgments “in favor of’ Nichols. In his brief to this court, Linowiecki states, “[cjontrary to the settlement agreement, the [consent] order speaks in terms of judgments, immediate executions issuing!,] and contempt. The settlement agreement in its totality in no way envisioned such actions.” Instead, Li-nowiecki says, the parties’ agreement did not include an admission of liability by either party.
The introductory paragraph in each of the consent judgments, which are identical, includes language stating that the judgment was being entered “in favor of [Nichols] and against [Linowiecki].” The record indicates that when the parties informed the circuit court that they had “reached an agreement for a consent order to be entered,” the first item Nichols’s attorney recited for the record provided:
“The parties have agreed that there -will be a surcharge entered against [Linow-iecki] as the personal representative of the estate of the decedent in the amount of $180,074.35....”
(Emphasis added.)
The first numbered paragraph in each of the consent judgments states that Linow-iecki, as the personal representative of the estate, “is surcharged in the amount of $180,074.36 for failing to account for money in his fiduciary capacity.” As Nichols points out, Black’s Law Dictionary defines “surcharge” as “[t]he amount that a court may charge a fiduciary that has breached its duty.” Black’s Law Dictionary 1579 (9th ed.2009).
Linowiecki cites authority for the general proposition that a consent order embodies an agreement of the parties and that a trial court cannot alter the terms of the parties’ agreement. However, he cites no authority, and makes no legal argument, regarding how the language used in the consent judgments, i.e., stating that the judgments were entered in favor of Nichols and against Linowiecki, alters the agreement that the parties reached and recited for the record.
“Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived. Moore v. Prudential Residential Servs. Ltd. P’ship, 849 So.2d 914, 923 (Ala.2002); Arrington v. Mathis, 929 So.2d 468, 470 n. 2 (Ala.Civ.App.2005); Hamm v. State, 913 So.2d 460, 486 (Ala.Crim.App.2002). ‘This is so, because “ ‘it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.’ ” ’ Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala.2007) (quoting Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003), quoting in turn Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)).”
*1090 White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008).
There would be no basis for the $180,074.35 surcharge against Linowiecki if he had not failed to carry out his fiduciary duties as the personal representative of the estate. Additionally, we see no substantive difference, and Linowiecki does not explain a difference, between the language recited at the hearing indicating that the parties had agreed that there would be a “surcharge entered against” Linowiecki and the circuit court’s statement that the judgments were against Li-nowiecki. Thus, we conclude that Linow-iecki has failed to demonstrate that the circuit court erred in stating that the consent judgments were entered in favor of Nichols and against Linowiecki.
Moreover, in reviewing the transcript of the proceedings during which the agreement was read into the record, both parties twice specified that the agreement was “to be entered as a consent order.” As a practical matter, we note that it is common practice that, when a settlement agreement is reached, the parties will prepare a settlement agreement and a release from future litigation arising out of the facts made the basis of the action and will ask the court to dismiss the action being litigated. The settlement agreement often will include a provision stating that it is being entered because of the parties’ desire to foreclose further litigation but that neither party admits to liability. Under such circumstances, the only judgment the trial court enters is one dismissing the action.
In this case, however, the parties did not simply reach a settlement and ask the circuit court to dismiss the actions. Instead, they expressly requested that consent judgments be entered in the cases. Linowiecki failed to provide this court with any basis or authority for his apparent belief that a consent judgment should not be capable of execution or that the parties should not be held in contempt for failing to abide by its terms.
“A consent order ‘embodies an agreement of the parties and thus in some respects is contractual in nature. But it is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.’ Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 378, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992).”
Austin v. Alabama Check Cashers Ass’n, 936 So.2d 1014, 1038 (Ala.2005) (emphasis added). Rule 70A(a)(2)(D), Ala. R. Civ. P., defines civil contempt as the “willful, continuing failure or refusal of any person to comply with a court’s lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with.” Accordingly, we conclude that the circuit court did not disregard the intent of the parties when it included language in the consent judgments that spoke “in terms of judgments, immediate executions issuing!,] and contempt.”
Linowiecki also argues on appeal that, because the circuit court ruled on August 2, 2012, that it was holding Linowiecki’s postjudgment motions in “abeyance,” those motions are still pending. However, for the reasons discussed above, the original motion to alter, amend, or vacate the consent judgment was deemed denied by operation of law on June 25, 2012. The amended motion to alter, amend, or vacate the consent judgments was filed after the initial motion had been deemed denied; therefore, it was untimely, and the circuit court did not have jurisdiction to consider it. See Alabama Farm Bureau Mut. Cas. Ins. Co., supra.
*1091 Because the circuit court did not have jurisdiction over either of Linowiecki’s postjudgment motions when it entered the August 2, 2012, order holding those motions in abeyance, that order is void. See J.B. v. A.B., 888 So.2d 528, 532 (Ala.Civ.App.2004) (“An order entered by a trial court without jurisdiction is a nullity.”). Linowiecki’s assertion that his post-judgment motions were pending before the circuit court at the time his appellate brief was filed is without merit.
For the reasons set forth above, the consent judgments are due to be affirmed.
2111110 — AFFIRMED.
2111111 — AFFIRMED.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.

. Section 43-2-502 provides:
"In making settlements of an administration, the executor or administrator must proceed as follows:
"He must make out an account between himself and the estate he represents, charging himself with all the assets of the deceased which have come into his possession, except the lands, and crediting himself with all the credits he is by law entitled to; which account, verified by his oath, must be filed with the judge of probate of the court having jurisdiction.
"With such account he must also file written evidence in his possession, on which he relies to sustain the credit side of such account, which may consist of an affidavit or any other legal evidence, in the discretion of the executor or administrator.
"He must, at the same time, file a statement, on oath, of the names of the heirs and legatees of such estate, specifying particularly which are under the age of 19 years; and, if any of them are persons of unsound mind, it must be stated; but if the names, ages or condition of such heirs or legatees are unknown and they reside out of the state, they may be made parties as unknown heirs or legatees.
"He must state the sum of funds of the estate which he has used for his own benefit, the time and the profit resulting from such use, if over legal interest, or, if he has not so used any of the funds of the estate for his own benefit, he must expressly deny on oath that he has so used such funds, and any party interested in the estate may contest the same.
"He shall be allowed all reasonable premiums paid on his bond as administrator or executor.”

. Pursuant to 11 U.S.C. § 362(c), a bankruptcy stay remains in effect until the case in bankruptcy is closed or dismissed, among other things.

. In her brief, Nichols states that Linowiecki did not appeal from the civil action, as opposed to the estate case, until August 13, 2012. Nichols contends that Linowiecki’s original postjudgment motion was denied by operation of law on June 25, 2012 (June 24, 2012, the 90th day following the filing of the postjudgment motion was a Sunday, see Bradley v. Bauldree, 101 So.3d 221, 225 n. 6 (Ala.Civ.App.2012)) and that, therefore, Linow-iecki had until August 6, 2012, to timely file his appeal of the civil action. However, the State Judicial Information System case-action summaries in both cases indicate that both were appealed on August 3, 2012. In addition, the notice of appeal contained in the record indicates that both the civil action and the estate case were appealed on August 3, 2012. We find no evidence in the record that the notice of appeal in the civil action was filed on August 13, 2012. We note that, in her brief on appeal, Nichols does not provide a citation to the record for her assertion that Linowiecki's notice of appeal in the civil action was filed on August 13, 2012. The record does not support Nichols's contention that the appeal of the civil action was untimely-

. We are not able to discern how Linowiecki determined that only six days had elapsed.

. In his reply brief, Linowieeki claims that the original postjudgment motion states that his attorney was in the process of revising the proposed consent judgments, prepared by Nichols’s attorney, to make them consistent with the settlement agreement when the cir *1089 cuit court entered the "proposed orders.” He argues that that statement encompasses his challenges to the consent judgments that he raised in the amended postjudgment motion. We disagree. A review of the original post-judgment motion shows that the only basis for error Linowiecki raised in that motion was that the consent judgments "insinuate[d]” fault.