240 So.2d 674

Jerry W. TYSON

v.

UNITED STATES PIPE AND FOUNDRY COMPANY, a Corporation.

8 Div. 407.

Supreme Court of Alabama.

Nov. 5, 1970.

Bell, Richardson, Cleary, McLain & Tucker, and L. Tennent Lee, III, Huntsville, for appellee.

Dieter J. Schrader, Huntsville, for appellant.

BLOODWORTH, Justice.

Appellant Tyson (cross-respondent) appeals from a final decree enjoining him from engaging in competition with appellee U. S. Pipe (cross-complainant) in certain named counties in Alabama and Tennessee.

The chronology of the case is as follows: On August 20, 1968, a written agreement was executed between Specialty Fasteners of Huntsville, Inc., an Alabama corporation (as "seller"), J. Wallace Nall, Jr., W. D. Upton and appellant Jerry W. Tyson (as "warrantors"), on the one hand, and appellee, U. S. Pipe, a New Jersey corporation (as "Buyer") on the other hand, for the purchase of Specialty Fasteners' assets and business by U. S. Pipe. The consideration for the sale was the transfer of 2,000 shares of U. S. Pipe's common stock to Specialty Fasteners. It was agreed that Specialty Fasteners would be dissolved and it would distribute the 2,000 shares of U. S. Pipe stock to its shareholders Nall and Upton (who owned 8,400 shares each) and Tyson (who owned 3,200 shares).

The agreement contained the following paragraph, the enforcement of which is the crux of this case.

"8. For a period of five (5) years from the date hereof Seller and the Warrantors jointly and severally agree that they shall not directly or indirectly, engage, whether alone or as a partner, stockholder or creditor of any enterprise, partnership, association, corporation, joint venture or any other entity (other than as a holder of not more than ten percent (10%) of the outstanding capital stock or outstanding long-term indebtedness of a corporation whose stock is listed on a stock exchange or is regularly traded in the over-the-counter market), in any business in the States of Alabama, Tennessee or South Carolina, of manufacturing, distributing and/or selling any merchandise, commodity or item of the kind or type now being manufactured, distributed and/or sold by Seller. In the event this covenant is deemed unenforceable with respect to any particular product or any particular trade area, such unenforceable provision shall be deemed separable from the enforceable provisions of this covenant and the enforceable provisions shall thereby be binding upon Seller and the Warrantors. Seller and the Warrantors agree that a breach of this covenant will result in irreparable and contingent damage to the business of Buyer for which Buyer will have no adequate remedy at law, and that in the event of any breach of this covenant Buyer, its successors and assigns, will be entitled to injunctive relief and such other further relief as may be proper in the premises."

The sale contemplated by the agreement was consummated and Tyson, Nall and Upton, sole stockholders in Specialty Fasteners, were given the stock in U. S. Pipe in exchange for their stock in Specialty Fasteners.

Appellant Tyson then became employed with U. S. Pipe on August 20, 1968, as manager over the facilities formerly owned by Specialty Fasteners in Huntsville. Subsequently, on October 31, 1969, Tyson's employment was terminated, ostensibly because U. S. Pipe contended that he was soliciting its other employees to work for him in competition with it.

On November 17, 1969, Tyson filed a bill for a declaratory judgment in the Madison County circuit court seeking the court's declaration that paragraph 8 of the agreement (the "non-competition" agreement) is null and void as to him. Demurrer to the bill was sustained on January 26, 1970. No amendment was ever filed.

Thereafter, on May 8, 1970, U. S. Pipe filed a cross-bill against Tyson. In para-

graph 2, the cross-bill alleges that on August 20, 1968, an agreement was entered into between Specialty Fasteners of Huntsville, Inc., U. S. Pipe, and J. Wallace Nall, Jr., W. D. Upton and the appellant, Jerry W. Tyson. Paragraph 2 further alleges that Nall, Upton and Tyson warranted that they were all the stockholders of Specialty Fasteners with Tyson owning 16% of the stock. Paragraph 3 alleges that on August 22, 1968 the sale was consummated and that Tyson, along with Nall and Upton, were given stock in U. S. Pipe in return for their stock in Specialty Fasteners. Paragraph 4 contains the terms of paragraph 8 of the agreement, which we have previously set out. Paragraph 5 alleges that at the time the agreement was consummated Specialty Fasteners was selling and distributing bolts, nuts, screws, washers, masonry anchors, powder actuated tools; electric power tools, air tools, cutting tools (drill bits, taps, milling cutters, etc.); automatic stapler and nailing machines; nails and staples; rivets, saw blades, abrasive blades and products; all thread rod; fastening systems (Uni-Strut, spring steel fasteners); special manufactured rods; assemblies and made-to-order bolting and anchoring devices; rental and repair of tools; and core drilling and accessories in the following counties in the State of Alabama: Lauderdale, Limestone, Madison, Jackson, Colbert, Franklin, Lawrence, Morgan, Marshall, DeKalb, Cullman, Etowah, Jefferson, Blount, Mobile, Dallas, Marion, Winston, and the Tennessee counties of Wayne, Lawrence, Giles, Lincoln, Franklin, Marion, Hardin, Bradley, Bedford, Marshall, Moore, Lewis, Coffee, Maury, Cannon, Hickmon, Perry, Rutherford, Warren, Grundy, Williamson and Knox. Paragraph 6 alleges that Tyson is presently engaged in the business of distributing and selling merchandise, commodities or items of kind or type previously being distributed and sold by Specialty Fasteners in violation of the agreement. Paragraph 7 alleges that unless Tyson is enjoined from such competition U. S. Pipe will be permanently injured in its rights under said agreement, that its damages by such competition on the part of Tyson are impossible to estimate, that the injury occasioned by such competition will greatly lessen the value of its business and that the damage is irreparable and continuing.

By his amended answer Tyson admitted the allegations of paragraphs 1, 4, 5 and 6 of the cross-bill and admitted all of paragraph 2 except the allegation that Nall, Upton and he warranted that they were all of the stockholders of Specialty Fasteners and that he owned 16% of such stock. Tyson further admitted, with respect to paragraph 3, that the sale as contemplated by the agreement and plan of reorganization was consummated and that he, Nall and Upton were given stock in U. S. Pipe in return for their stock in Specialty Fasteners, but stated that they received their stock in U. S. Pipe from Specialty Fasteners. He specifically denied the allegations of paragraph 7.

Tyson then filed a cross-bill to U. S. Pipe's cross-bill praying again for a declaration of rights under the agreement and plan of reorganization. In his paragraph 6, he admitted that he became "engaged in selling and distributing merchandise, commodities and items, in competition with respondent [U. S. Pipe]." In paragraph 8, Tyson alleged "that Specialty Fasteners * * * and * * * U. S. Pipe * * * were never engaged in the manufacture of the merchandise, commodities, or items described in paragraph 5 of the respondent's cross-bill, nor were either of the corporations engaged in the sales or distribution of said described merchandise, commodities, or items in any area other than northern Alabama and southern Tennessee, save for isolated sales on extremely rare occasions."

U. S. Pipe filed a demurrer and an answer to Tyson's cross-bill. Apparently, the demurrer was never ruled on, and the case was set down for the taking of oral testimony before the trial court.

The cause was thereafter submitted to the trial court for final decree on U. S. Pipe's cross-bill, Tyson's answer thereto, Tyson's cross-bill, U. S. Pipe's answer thereto, exhibits, and testimony taken in open court.

The trial court's final decree of July 13, 1970 found: that Tyson was engaged in competition with U. S. Pipe in violation of paragraph 8 of the agreement; that U. S. Pipe was not guilty of laches in asserting its cross-bill; that paragraph 8 of the agreement is supported by a valid consideration and the "non-competition" agreement is reasonable as to both time and area in seeking to bar Tyson's competition in the counties set out in U. S. Pipe's cross-bill; that U. S. Pipe is entitled to an injunction. A writ of injunction was thereafter issued. On July 23, 1970, this appeal was taken. The case was submitted on oral argument November 2, 1970.

There are nine assignments of error.

Assignment of error 1, is "For that the Respondent's [U. S. Pipe's] cross-bill fails to state a cause of action since it failed to plead that it was doing business in those counties in which it sought to enjoin the Appellant from doing business."

As appellee U. S. Pipe aptly points out, this assignment of error is insufficient because no adverse ruling is complained of. Only adverse rulings of the trial court are subject to assignments of error and are consequently reviewable on appeal. Thornton v. Tutt, 283 Ala. 72, 73, 214 So.2d 425 (1968); Stapleton v. Stapleton, 282 Ala. 62, 64, 209 So.2d 202 (1968). See also, Ala.Dig., Appeal & Error, ⊗718. Additionally, we observe that the failure to make such allegations was not raised by demurrer. No demurrer to appellee's cross-bill was interposed.

Assignment of error 4 complains that "* * * laches is a valid defense * * and should preclude a finding for the Respondent." Assignment of error 5 states "* * * that there is no consideration

provided for * * * the restrictive covenant at issue * * *." Assignment of error 7 is "* * * that the territory in which the Appellant has been enjoined from doing business is too large in area."

Again, U. S. Pipe contends that these assignments are insufficient since they do not complain of any adverse rulings of the trial court. We agree. Thornton v. Tutt, supra; State v. McDaniel, 285 Ala. 310, 315, 231 So.2d 878 (1970).

This court has stated that the office of an assignment of error is to take "the place of a declaration or bill in a suit in a lower court. Its purpose is to inform the appellate court of the precise error relied on. If an assignment of error does not succinctly point out the error complained of with precision and clearness it will not be considered." State v. McDaniel, supra, at p. 312, 231 So.2d at p. 879.

We also observe that assignment of error 4 is nothing more than a conclusion that "laches" is a defense. We likewise make the same observation with regard to assignments of error 5 and 7, namely, that they are nothing more than conclusions on the part of appellant. Since no adverse ruling of the trial court is complained of, nothing is presented for our review.

In assignment of error 8, appellant Tyson complains " * * * that the Final Decree is defective in that it does not state the court's finding on the sufficiency * * *" of appellant's plea 2 to the appellee's cross-bill. In assignment of error 9, the charge is " * * * that the Final Decree is defective since it fails to rule on" appellant's prayer for a declaratory judgment which prays that the non-competition agreement be declared null and void as being too broad in territory, time and manner of competition.

Again, we have to agree with appellee U. S. Pipe's criticism that neither of these assignments complain of any error on the part of the trial court. Both assignments

are similar to assignments of error 1 and 2, held bad in Stapleton v. Stapleton, supra, because neither alleges any error on the part of the trial court of which the appellant desires our review and revision. The two assignments of error in *Stapleton* held insufficient were:

" '1. The final decree of the court rendered April 28, 1965, is contrary to the evidence in the case for that the Appellee failed to prove abandonment as alleged in his Bill of Complaint. (Transcript page 50)

" '2. The final decree of the court rendered April 8, 1965, is contrary to the Law of the Case for that the Appellee failed to prove abandonment as alleged in his Bill of Complaint. (Transcript page 50) ' "

Additionally, we note that nothing appears in the references to the transcript showing that any ruling was requested (nor any ruling made) as to the sufficiency of Tyson's plea 2. We observe that the trial court did rule in its final decree that the non-competition agreement " * * * is reasonable as to both time and area."

This leaves for our consideration only assignments of error 2, 3 and 6. Appellee U. S. Pipe directs essentially the same argument towards their insufficiency as it has to the other assignments, namely, that they complain of no adverse ruling of the trial court.

■ Assignment of error 6 is, "For that the evidence is insufficient to sustain a decree for the Appellee which enjoins the Appellant from doing business in eighteen (18) Alabama counties and twenty-two (22) Tennessee counties."

We have no doubt that assignment of error 6 is not sufficient to invite our review. In Life & Casualty Ins. Co. of Tennessee v. Womack, 228 Ala. 70, 71, 151 So. 880, this court held an assignment of error to be insufficient which stated, "There is no evidence to support the verdict and judgment of the Lower Court." We think

that assignment of error 6 is bad for the same reason given by Justice Bouldin in *Life & Casualty*, supra, because it "alleges no error in the trial court."

Finally, we come to assignments of error 2 and 3. Assignment 2 complains of the insufficiency of the proof that U. S. Pipe was doing business in the counties in which it sought to enjoin Tyson from doing business.

■ We think the evidence, and legitimate inferences therefrom, was sufficient proof (as to U. S. Pipe's doing business in such counties) upon which the trial court could base its decree. Tyson admitted in his testimony that he told a representative of U. S. Pipe that he was "in the nut, bolt and screw business" and that he started "to compete" with U. S. Pipe around January 26 or 28, 1970, and that he "continued right on with the competition that I was in." He further testified that "I started selling nuts, bolts and screws and fasteners *in this area.*" [Our emphasis] In his answer to U. S. Pipe's cross-bill, Tyson admitted to paragraph 5 (which sets forth that Specialty Fasteners was in the business of selling those certain items in the named counties at the time the agreement was signed.) Tyson also stated in his sworn cross-bill that he "never * * * engaged in the sales * * *" of the described items *"in any area other than Northern Alabama and Southern Tennessee * * *"* [Emphasis supplied] We take judicial notice that the counties in which Tyson is enjoined from engaging in business are located in northern Alabama and southern Tennessee, with the exception of Knox County. Parker v. Ebsco Industries, Inc., 282 Ala. 98, 103, 209 So.2d 383 (1968). Witness Upton (for U. S. Pipe) testified that U. S. Pipe was carrying on the same nature and type of business on the day of trial as Specialty Fasteners was doing on the date the agreement was entered into, that in fact, "It's the same business, the same kind of business." Further, he testified that after purchase of Specialty Fasteners by U. S. Pipe

"there were no changes made." Though the testimony was not specific that U. S. Pipe continued to operate in the same geographical area, we think the trial court could infer this fact from the evidence.

Assignment of error 3, charges that the evidence is insufficient in that U. S. Pipe failed to prove that its damages would be impossible to estimate, that the injury would lessen its business, and that the damages would be irreparable and continuing.

 We think appellee U. S. Pipe correctly answers this charge by showing that it was specifically stipulated at trial by appellant Tyson that the damages to U. S. Pipe were "constantly recurring and irreparable and they are continuing," were "not susceptible of exact proof or compensation." Tyson also admitted that he was competing with U. S. Pipe. We think it logical to conclude that the court could find from this evidence that the injury would lessen U. S. Pipe's business.

We are not impressed with Tyson's argument that his amended answer (filed after oral testimony was taken) had the effect of withdrawing this stipulation. In the first place, in his original answer, Tyson denied the allegations of paragraph 7 of the cross-bill (which contained the averments of damage). Likewise, he denied them in his amended answer. There was no change in his position. The amended answer simply changed the original answer as it applied to certain other paragraphs of the cross-bill. In the second place, we do not think the amended answer in any way affected the facts admitted in the stipulation. See Ellis & Co. v. Mobile J. & K. C. R. Co., 166 Ala. 187, 51 So. 860 (1909), where it was held that an agreement between counsel that the facts contained in a pleading filed by plaintiff are true is not affected by subsequent amendment of such pleading by the plaintiff.

This then essentially was a factual issue. And, as we observed in Methvin v. Methvin,

279 Ala. 671, 673, 189 So.2d 468, 469 (1966) on factual issues "the finding of the trial court must stand if there be any evidence to support his finding.—Ala.Dig., Appeal & Error, ⊜1008, et seq."

In view of the conclusion we have reached as to assignments of error 2 and 3, there is no need to consider whether these assignments are insufficient under our decisions.

Finding therefore no reversible error in this case, we conclude that the trial court should be affirmed.

Affirmed.

SIMPSON, COLEMAN, HARWOOD and McCALL, JJ., concur.