276 So.2d 425

**Robert Gregg McCULLOCH and Edith Harrison McCulloch**

v.

**James E. ROBERTS and Katrina Roberts.**

**SC 90.**

Supreme Court of Alabama.

April 5, 1973.

Rehearing Denied May 3, 1973.

Spain, Gillon, Riley, Tate & Ansley and Ollie L. Blan, Jr., Birmingham, for appellants.

J. Robert Fleenor and Warren B. Lightfoot, Birmingham, for appellees.

BLOODWORTH, Justice.

Appellants appeal from a decree of the Circuit Court of Jefferson County, Alabama, in equity, rendered on January 20, 1972. Appellees move to dismiss the appeal, assigning as grounds their contention that the decree of January 20, 1972, is not a final decree and will not support an appeal.

Appellants filed a bill against appellees to quiet title to certain lands. Appellees filed a cross bill to establish an easement across the lands in their favor.

## I. Motion to Dismiss the Appeal

The trial court, in its decree, adjudged and decreed that appellants (complainants below) own a certain tract of land on the Cahaba River in Jefferson County, which is subject to a convenient right-of-way over it to the Cahaba River in favor of the appellees (respondents below) for use by appellees as a route of ingress and egress to the river for the purposes of boating, fishing and swimming. The court ordered the parties to submit to the court within 30 days "an agreed suggested route of ingress and egress not more than ten (10) feet in width." In the event the parties did not agree upon a route, then each was ordered to submit a suggested route to be fixed by the court.

No agreement was ever reached as to a suggested route. Appellants filed their suggested route with the court on February 21, 1972. Appellees state, in brief, they submitted, but they have not filed a suggested route. According to the record, no decision has been made by the trial court fixing a route.

In Ex parte Elyton Land Co., 104 Ala. 88, 91, 15 So. 939 (1893), this court held that:

"* * * The test of the finality of a decree to support an appeal is not whether the cause remains *in fieri,* in some respects, in the court of chancery, awaiting further proceedings necessary to entitle the parties to the full measure of the rights it has been declared they have; but whether the decree which has been rendered, ascertains and declares these rights—if these are ascertained and adjudged, the decree is final, and will support an appeal. * * *"

Likewise, in Carter v. Mitchell, 225 Ala. 287, 293, 142 So. 514 (1932), the rule was stated as follows:

"The test of the finality of a decree sufficient to support an appeal is that it ascertains and declares the rights of the parties and settles the equities, and is not controlled by the fact that the cause remains in fieri in respect to other matters. [Citations omitted]"

In Adams v. Sayre, 76 Ala. 509, 518 (1884), it was held that:

"No general rule can probably be stated, which would define accurately, for all possible emergencies, what constitutes the equities of every case. These equities embrace the substantial merits of the controversy—the material issues of fact and law litigated or necessarily involved

in the cause, which determine the legal rights of the parties, and the principles by which such rights are to be worked out. * * *"

In the case at bar, the chief, if not sole, issue involved was whether the appellees had a right to cross appellants' property to get to the Cahaba River for the purposes of fishing, swimming and boating. The trial court stated in its decree of January 20, 1972:

"The question involved being whether or not respondents have a right of egress and ingress over complainants lands to the Cahaba River, and the right to swim, fish and use boats in such river."

It is noteworthy that appellees, in their cross bill, did not pray that the court establish the location of their claimed route of ingress and egress. The trial judge introduced this feature of the case in his decree.

Thus, it appears to this court that the chief question ("the equities" of the case)—the right of egress and ingress over appellants' lands—was adjudicated in the decree of January 20, 1972.

In Sexton v. Sexton, 280 Ala. 479, 482, 195 So.2d 531, 533 (1967), the rule was stated that:

"Equity decrees may be partly final and partly interlocutory. A decree which ascertains and declares the rights of the parties and settles the equities is a final decree, although it provides for further proceedings under the direction of the court in order to make the final decree effective, such decree is interlocutory and remains within the control of the court because as to such decree and further proceedings thereunder the cause remains in fieri. [Citations omitted]"

See also Newton v. Ware, 271 Ala. 444, 124 So.2d 664 (1960), and Ex parte Sparks, 254 Ala. 595, 49 So.2d 296 (1950).

Appellees' motion to dismiss the appeal is denied.

## II. Merits

From the evidence adduced at trial, it appears that in 1943, Dr. Ethel Stuteville sold a tract of land to Jessie W. Jones and granted him, by the conveyance, "the right of ingress and egress to and from said Cahaba River and the right for himself and for his guests to fish and use boats and swim therein." This tract of land sold by Dr. Stuteville to Jones is the land presently owned by appellees, while appellants own the land retained by Dr. Stuteville over which the easement was granted. For convenience' sake, we shall hereafter refer to appellees' property as the dominant estate and to appellants' property as the servient estate.

The same or similar language as that used in the deed from Dr. Stuteville to Jones appears as a part of the granting clause in the conveyances of the dominant estate down to the conveyance to the appellees. Appellees' deed contains what appears to be a quitclaim to the easement, expressly made without warranty.

## A. Abandonment

Appellants contend on this appeal that the easement so granted was lost by abandonment prior to the time the appellees acquired the dominant estate.

The testimony would seem to indicate that Ed Leslie, the predecessor in title to the appellees, did not use the right-of-way across the appellants' property to the Cahaba River for a sixteen year period from 1953 to 1969 (when he owned the dominant tract), with one exception, and on that occasion he asked permission of the appellants to cross their property prior to doing so. However, it appears that Leslie was partially crippled and did not get around very well. It further appears that Leslie expressed himself as having no use for the river, nor was he a fisherman. Leslie did state on one occasion that he was glad to know that he had the right to use the river if he ever wanted to.

In Western Union Telegraph Co. v. Louisville & N. R. Co., 202 Ala. 542, 81 So. 44 (1919), this court held that:

"Mere nonuser of a right of way or other easement, acquired by grant or condemnation, however long-continued, will not of itself work an abandonment and forfeiture of the right. Such nonuser must be accompanied by an intention to abandon, and this intention must be clearly deducible from the declarations or conduct of the claimant, or from the facts and circumstances incidental to his nonuser. [Citations omitted] * * *"

On the second appeal of the same case, in Western Union Telegraph Co. v. Louisville & N. R. Co., 206 Ala. 368, 89 So. 518 (1921), the court wrote that:

"The essence of the inquiry of abandonment vel non of an easement by the owner is his intention. In the absence of other evidence going to show an intention to abandon the right or easement, mere lapse of time and nonuser will not serve to justify a finding that an easement has been abandoned by the owner; but lapse of time and nonuser are evidentiary of an intention to abandon, and, when considered with other evidence of such intention, may be entitled to great weight according to the circumstances [Citations omitted]"

■ Thus, the indications from the testimony of nonuser for sixteen years, the crossing of the servient property only once and then by permission, and the statements by Leslie, himself, may be persuasive (as appellants argue) that Leslie intended to abandon whatever right he may have had to cross the servient estate to get to the river. On the other hand, inferences may also be drawn from the testimony to the effect that Leslie's non-use was due to his bring crippled, the difficulty he would have experienced in his using the easement, and his lack of interest in fishing or using the river. (There was testimony that the properties all sloped down to the river.) These conflicting inferences were resolved by the trial judge who decided this issue in appellees' favor. In view of the presumptions to be indulged in favor of his findings, we will not say those findings on this issue were plainly and palpably erroneous. Wolfe v. Thompson, 285 Ala. 745, 235 So. 2d 878 (1970). Nor, can we say the intention to abandon is "clearly deducible." Western Union Tel. Co. v. Louisville & N. R. Co., supra.

### B. Dead Man's Statute

The following excerpt from the record will give the context in which the next assignment of error arose, viz:

"Q Now, Mr. McCulloch, did you, during Mr. Leslie's lifetime, have a conversation with him concerning the right to cross your property and the use of the river?

"A About 1962 based on Jones' deed.

"MR. LIGHTFOOT: Wait just a minute. We object to him telling what the conversation was, he can say he had a conversation.

"THE COURT: Overrule.

"Q Go ahead, if you would.

"THE COURT: He has already answered your question.

"Q Did you have such a conversation?

"A We had a conversation.

"Q All right. Would you tell us what the conversation was?

"MR. LIGHTFOOT: We object to that. Hearsay.

THE COURT: Sustain.

"MR. BLAN: If Your Honor please, this is our position in this case that the easement or right of way was abandoned, it was never used by Mr. Leslie during the entire time he lived out there, which was a period of about sixteen years. It will further be our testimony by this witness that he told Mr. McCulloch that he had no rights to use the river and he didn't want to use the riv-

er; now, if Your Honor please, according to the rules of evidence, that is an exception to the hearsay rule as being a declaration against Mr. Leslie's interest, against his pecuniary interest and his proprietary interest in the property and we offer it, if Your Honor please, as an exception to the hearsay rule.

"THE COURT: I have already sustained the objection, let's go forward.

"MR. BLAN: We except. If Your Honor please, I would like to make a showing as to what that testimony would be, and I will be glad to cite to Your Honor authorities to support my position.

"THE COURT: Yes, you have asked him what was said by them and that is purely hearsay testimony and that is the basis I am putting it on and I am going to stand on that.

"MR. BLAN: This is a predecessor to Mr. Roberts and he can only claim under this man's title, if Your Honor please, it's an exception to the hearsay rule when you make a declaration against your interest and this would be against the interest of Mr. Leslie as to his ownership or interest in the property of Mr. McCulloch.

"THE COURT: Well, let's go forward.

"MR. BLAN: We except."

(This case, though in equity, was not tried under the so-called Lazy Lawyer's Rule (Title 7, § 372(1), Code of Alabama 1940, as last amended).)

Appellants assign as error the sustaining by the trial court of the objection by appellees to the question asked of appellant, McCulloch, concerning the conversation which he (McCulloch) had with Leslie about the latter's rights to use the river and his further intentions not to use the river.

Appellants assert on this appeal, as they did in the court below, that the testimony should have been permitted under an exception to the hearsay rule as being a declaration by Leslie against his pecuniary and proprietary interest. Appellees contend that the evidence was inadmissible under the Dead Man's Statute (Title 7, § 433, Code of Alabama 1940).

Notwithstanding the objection was made on the ground of hearsay and sustained on that basis, it is our duty to uphold the trial court in its ruling, if the ruling was correct on any other ground. Nichols v. State, 276 Ala. 209, 160 So.2d 619. See also Alabama Digest, Vol. 2A, App. & Error ☞854(4). We agree with appellees that the conversation was inadmissible under the Dead Man's Statute.

Although appellants contend that the estate of Ed Leslie is not interested in the outcome of the suit, according to our decisions, appellees are successors in interest to Ed Leslie, and the bar of the Dead Man's Statute extends to protect them, the same as Leslie's estate.

This court stated the rule to be to this effect in Redwine v. Jackson, 254 Ala. 564, 49 So.2d 115 (1950):

"* * * We have held in several cases that the bar or rule of exclusion [of the Dead Man's Statute] applies to protect those claiming in succession to the deceased the same as to the estate of the deceased, when the other conditions exist. * * *"

Likewise, in Federal Land Bank v. Curington, 233 Ala. 263, 171 So. 361 (1936), this court held that:

"* * * [I]t has long been held that the spirit of section 7721, Code, [now Title 7, § 433] prohibits the testimony of the living party to a transaction with the deceased against the party to whom his interest is opposed, when the deceased person's estate, or that of his grantee or heir, is interested in the result of the suit. The rule applies to protect those claiming in succession to the deceased the same as the estate of the deceased, when the other conditions exist. [Citations omitted]"

The trial court committed no reversible error in sustaining appellees' objection to the question.

## C. Showing

■ This assignment of error charges the trial court erred in not permitting appellants to make a showing as to what the testimony of appellant McCulloch would be (as appears from that portion of the transcript hereinabove set forth). We do not find from this extract of the record that the trial court ever ruled that he would not permit a showing. It is only adverse rulings which are subject to assignments of error and which are reviewable on appeal. Tyson v. United States Pipe and Foundry Company, 286 Ala. 425, 240 So.2d 674 (1970). It appears that the trial judge was simply explaining his ruling on the objection to counsel for appellants. At any rate, it clearly appears from this excerpt from the testimony that counsel for appellants made his showing by stating what he expected the witness' testimony to be. We find no reversible error here.

## D. Adverse Possession

Appellants contend that the great preponderance of the evidence adduced at trial established that the easement claimed by appellees had been lost by adverse possession by appellants and their predecessors in title under color of title for more than ten years prior to the time appellees acquired title to the dominant estate.

Appellants state, in brief in support of this contention, that appellants and their predecessors in title forbade the use of their property by anyone other than those persons to whom they had given permission to cross the servient estate and use the river. We do not draw this inference from the evidence. Moreover, this matter addressed itself to the trial court, who heard and observed the witnesses testify. We are unwilling to say he should have determined this issue in favor of appellants. Nor, can we say the great preponderance of the evidence supported this contention.

Appellants further contend that the stone steps across the servient estate were covered with underbrush and were impassable and that this "constituted an effective obstruction of the route previously used in exercising the river rights." Without determining whether this would be sufficient "obstruction" to constitute adverse possession on the part of appellants, if continued for ten years under color of title, it appears to us from the evidence that the steps were "obstructed" for only a five year period, which falls far short of the requisite period of time to constitute adverse possession.

■ The burden of proving adverse possession rests upon the party who asserts such. Machen v. Wilder, 283 Ala. 205, 215 So.2d 282 (1968). We cannot hold that the trial judge was plainly and palpably wrong in determining that this burden was not met by appellants. The trial court did not err in this respect.

## E. Deposition

Appellants assign as error the trial court's failure to rule on appellants' objections to certain portions of the deposition of A. R. Green. (The deposition was taken by appellants but offered at trial by appellees.) In addition, appellants assign as error the trial court's reception into evidence over appellants' objections of the testimony of Mrs. A. R. Green, contained in the deposition of A. R. Green. No ruling by the trial court with regard to these objections appears in the record.

In Thornton v. Tutt, 283 Ala. 72, 214 So.2d 425 (1968), it was held that:

"Only adverse rulings of the trial court are subject to assignments of error and reviewable on appeal. * * *"

See also Tyson v. United States Pipe and Foundry Company, supra.

■ As there is no ruling of the trial court adverse to appellants which appears in the record with regard to these objections, there is nothing presented to this court for review by these assignments of error.

### F. Notice

■ Appellants here complain of error by the trial court in its finding that appellants took title to the lands with notice of the existence of the easement.

Evidence as to this issue was in dispute and the matter resolved against appellants by the trial judge. Moreover, appellant McCulloch, himself, admitted that he learned of the existence of the easement in 1961. This was prior to his purchasing a portion of the lands. We find no error to reverse with respect to this finding.

It is thus that we must conclude there is no reversible error in any of the assignments of error argued, and this cause should be affirmed.

Affirmed.

HEFLIN, C. J., and COLEMAN, McCALL and JONES, JJ., concur.