Glenda N. FINLEY

v.

Matthew McCOY.

2150031.

Court of Civil Appeals of Alabama.

March 11, 2016.

David C. Livingston, Gadsden, for appellant.

Jack Floyd, Gadsden, for appellee.

MOORE, Judge.

Glenda N. Finley appeals from a judgment entered by the Etowah Circuit Court ("the circuit court") awarding Matthew McCoy a 30–foot right-of-way over her property located in Etowah County ("the Finley property") and finding that Matthew had an easement by prescription and an easement by implication over the Finley property. We affirm the trial court's judgment.

## Procedural History

After Matthew filed a petition in the Etowah Probate Court ("the probate court") seeking condemnation of a right-of-way over the Finley property at a location referred to as "the driveway," the probate court entered a judgment awarding Matthew a right-of-way across the Finley property in order to allow Matthew access to his property ("the McCoy property"), which is landlocked. On March 17, 2014, Finley appealed the probate court's judgment to the circuit court. Also on March 17, 2014, Matthew amended his petition to assert that he had an easement by prescription, implication, and necessity over the Finley property. After a de novo trial, the circuit court entered a judgment on May 18, 2015, condemning the 30–foot right-of-way over the Finley property in favor of Matthew for purposes of ingress and egress and awarding Finley cry damages in the amount of $5,500; the circuit court also stated that, in the alternative, Matthew held an easement by prescription and implication. On June 11, 2015, Finley filed a postjudgment motion. That motion was denied by operation of law on September 9, 2015. *See* Rule 59.1, Ala. R. Civ. P. On September 16, 2015, Finley filed her notice of appeal to the Alabama Supreme Court; that court transferred the appeal to this court, pursuant to Ala.Code 1975, § 12–2–7.

## Facts

Before 1945, Dallas Tucker and Lula Tucker owned both the Finley property and the McCoy property as one parcel. In 1945, the Tuckers first divided their property into two parcels by transferring the McCoy property to Jacob Hildebrand and Annie Hildebrand, who later transferred the McCoy property to John L. McCoy in 1951.

Ronald John McCoy, who was John L. McCoy's son and successor in title as well as Matthew's predecessor in title, testified that he had moved to the McCoy property in 1951 when his father purchased the property. He testified that his family had lived in a house on the McCoy property for 10 or 12 years, until the house burned. He testified that his family had crossed the Finley property by way of the driveway in order to reach their house; he testified that there was no other way to access the McCoy property. Ronald testified that the house on the McCoy property had burned, that, after the house burned, his family had raised cattle on the McCoy property up until the 1990s, and that they had accessed the McCoy property every day during that period by using the driveway. He testified that his family had subsequently used a garage on the McCoy property for storage. Ronald testified that shortly before Finley acquired the Finley property in 2003 his family had stopped using the driveway. He testified that Finley had blocked the driveway by the time this action had been commenced. Ronald testified that the driveway had been used continuously for more than 20 years.

Dorothy Powell, Ronald's sister, and Billy Shadwrick, who had previously lived near the McCoy property, also testified that the owners of the McCoy property had used the driveway continuously for more than 20 years. Powell testified that Harvey McCoy, who was John L. McCoy's brother, had owned the Finley property at the time John had owned the McCoy property. She testified that Harvey had not objected to John's use of the driveway. Shadwrick admitted that the driveway had not been used as much after the house on the McCoy property had burned down.

Matthew testified that, after he initiated the condemnation action in the probate court, Finley moved a trailer across the driveway. Matthew testified that, to cross another person's property to get to Mine Road, a different public road than the road the driveway leads to, would not be feasible. He testified that it would probably cost $100,000 to make that way passable because there is a big hill and rock bed between the McCoy property and Mine Road.

Alvin Wain testified that he had lived on property adjacent to the Finley property from 1985 until 2007 and that he had seen the McCoy family use the driveway only two or three times. He testified that, at the time of trial, trees were grown up in the driveway and that he did not think anyone could use it.

Finley testified that, after the house on the McCoy property burned, according to her recollection, in 1968 or 1969, the driveway had been used by the McCoy family "once in a while." She testified that a double-wide mobile home had been placed across the driveway toward the back of her property in 1974 and that the mobile home had burned in 1985. She testified that the McCoy family would drive around the mobile home and "ride the ditch" beside the driveway to get to the McCoy property during that time. She testified that the driveway has been blocked by trees for 32 years and that the McCoys had had to go around trees and cut tree limbs off of trees in order to access the McCoy property using the driveway.

Finley testified that she had placed a new mobile home across the driveway before this action had been commenced and that it would be a big expense to move the mobile home. She testified that the McCoy property almost touches Mine Road and that accessing the McCoy property from that direction would be more convenient and accessible.

## Standard of Review

■ " '[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court's conclusion on issues of fact, and this Court will not disturb the trial court's conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.' "

*Reed v. Board of Trs. for Alabama State Univ.,* 778 So.2d 791, 795 (Ala.2000) (quoting *Raidt v. Crane,* 342 So.2d 358, 360 (Ala.1977)).

## Discussion

■ On appeal, Finley argues that the circuit court erred in condemning a right-of-way over her property and erred in determining that Matthew had an easement by prescription and implication. We find the issue whether there was an easement by implication dispositive and, therefore, pretermit discussion of the other aforementioned issues.

With regard to whether there was an easement by implication, Finley argues:

"[T]he use of the easement by [Matthew] has not been 'continuous' but only sporadic. [Matthew's] use of the 'easement' essentially ceased after the house built by John L. McCoy burned in either in 1967 or 1968. Ronald McCoy did store some toilets in a shed on the property, which were retired in about 2001, by 'going around' a trailer blocking the easement, but said use, in and of itself, is insufficient to establish that the McCoys intended to continue use of the 'easement.' "

■ In *Helms v. Tullis,* 398 So.2d 253, 255–56 (Ala.1981), our supreme court explained:

"Easements created by implication cover a variety of types of easements. Creation by this method requires not only original unity of ownership, *Brewer v. Avinger,* 208 Ala. 411, 94 So. 590 (1922), but also that the use be open, visible, continuous, and reasonably necessary to the estate granted. *Birmingham Trust & Savings Co. v. Mason,* 222 Ala. 38, 130 So. 559 (1930); *Walker v. Clifford,* 128 Ala. 67, 29 So. 588 (1901). The implication is that the parties implied such an easement because the grantee, having seen the use the grantor made of the property, can reasonably expect a continuance of the former manner of use. R. Powell, [*Powell on Real Property* ] ¶ 411 [ (abr. ed.1968) ]."

In the present case, there is no dispute that the McCoy property was landlocked and that the driveway had been used by the McCoy family for many years as the sole access to their family's home on the McCoy property. Even after that house burned down, the family continued to raise cattle on the McCoy property and subsequently used the property for storage; the McCoys used the driveway as their sole means of access to the McCoy property when it was being used for raising cattle and storage. Multiple witnesses testified to continuous usage of the driveway as the sole access to the McCoy property for at least 20 years. Based on the foregoing evidence, we cannot conclude that the circuit court erred in determining that the use of the driveway was continuous so as to give rise to an easement by implication.

■ Finley also argues that any easement had been abandoned.

"The essence of the inquiry of abandonment vel non of an easement by the owner is his intention. In the absence of other evidence going to show an intention to abandon the right or easement, mere lapse of time and nonuser

will not serve to justify a finding that an easement has been abandoned by the owner; but lapse of time and nonuser are evidentiary of an intention to abandon, and, when considered with other evidence of such intention, may be entitled to great weight according to the circumstances."

*Western Union Tele. Co. v. Louisville & Nashville R.R.*, 206 Ala. 368, 370, 89 So. 518, 518 (1921).

In *Zadnichek v. Fidler*, 894 So.2d 702, 709 (Ala.Civ.App.2004), this court reasoned:

"In the present case, the Zadnicheks argue that not only have all of the appellees failed to use the easement and acquiesced in the Zadnicheks' exclusive use, but they also have taken positive steps to obtain alternative means of ingress and egress to their properties from Highway 9. . . .

"Although the evidence supports the Zadnicheks' argument that the appellees had taken affirmative steps to secure other access to Highway 9, it was for the trial court as the finder of fact to determine whether those actions constituted abandonment of the easement on Parcel B. The trial court was presented with Fidler's testimony that he and Kenneth Zadnichek had discussed the fact that, if any of Frances Bishop's children ever purchased Parcel F, the Zadnicheks would have to open the easements on Parcels A and B. Kenneth Zadnichek denied that such a conversation ever occurred, but the trial court was authorized, in determining whether the appellees intended to permanently abandon their easements across the Zadnicheks' property, to credit Fidler's testimony and to discredit Kenneth Zadnichek's testimony. As the supreme court pointed out in *Alabama Power Co. v. Daily*, 31 Ala.App. [441] at 443, 18 So.2d [142]

at 144 [ (1944) ], it is a 'universal rule that the question of abandonment ordinarily is an issue of fact.' We will not substitute our judgment for that of the trial court on the question of abandonment."

Furthermore, in *McCulloch v. Roberts*, 290 Ala. 303, 307, 276 So.2d 425, 428 (1973), our supreme court affirmed a trial court's decision that an easement had not been abandoned even though there was "testimony of nonuser for sixteen years [and evidence of] crossing of the servient property only once and then by permission."

In the present case there was disputed evidence regarding the frequency of use of the easement; however, it was undisputed that the driveway continued to be used as the exclusive access to the McCoy property. Given the circuit court's discretion in determining issues of fact, we cannot conclude that the circuit court erred in determining that no abandonment had occurred.

■ Finally, Finley argues that the judgment condemning the 30–foot right-of-way and finding an easement by prescription and implication is inconsistent. We note, however, that any error in condemning the 30–foot right-of-way and awarding Finley damages despite also finding that Matthew had an easement across the Finley property inured to the benefit of Finley. Therefore, any error on this point was harmless as it relates to Finley, and Matthew has not appealed. *See* Rule 45, Ala. R.App. P. Accordingly, we will not reverse the circuit court's judgment on this point.

### Conclusion

Based on the foregoing, the circuit court's judgment is affirmed.

AFFIRMED.

THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.