DONALDSON, Judge.
Commonwealth Savingshares Corporation ("Commonwealth") appeals the judgment entered by the Jackson Circuit Court ("the trial court") in favor of Fayetteville Holdings, LLC ("Fayetteville"), Awesome Properties, LLC ("Awesome Properties"), the Industrial Port and Rail Center of Scottsboro, LLC, and the City of Scottsboro on Commonwealth's claims seeking a declaratory judgment, an injunction, and an award of damages based on theories of trespass and nuisance. At issue is an easement ("the easement") for an industrial conveyor ("the conveyor") that runs through Commonwealth's property. After an annexation in 2004 by the City of Scottsboro, the parties' properties were subjected to the regulations in the Scottsboro Zoning Ordinance ("the ordinance"). Commonwealth argues that the ordinance prohibits the presence of the conveyor, thereby extinguishing the easement, and that the conveyor is a nuisance. We determine that the conveyor is permitted as a nonconformity under the ordinance, that the easement is not extinguished, and that the conveyor is not a nuisance. As a result of those holdings, we affirm the judgment, and we pretermit discussion of Commonwealth's arguments regarding the trial court's alternative grounds to support the judgment.
Facts and Procedural History
This case began on August 4, 2006, when Awesome Properties filed a complaint against James Christopher seeking an injunction to prohibit the construction of a road underneath the conveyor within an easement owned by Awesome Properties. At that time, Awesome Properties owned industrial property on Goose Pond Island *594 and Christopher owned residential waterfront property on the island. In the judgment, the trial court summarized the first nine years of the proceedings:
"Due to the nature of this case, including multiple parties and several changes in parties-in-interest over time, the litigation has been prolonged. Based on the dismissal and joinder of several parties over the years which necessarily changed the remaining claims and defenses, on December 15, 2014, this Court ordered the current parties to replead their claims and counterclaims, then the Court realigned the parties in its Order dated June 3, 2015."
After the parties were realigned and had amended their pleadings, the plaintiffs were Christopher and SOUTHBank, FSB, which, as explained infra, purchased some of the property burdened by the easement from Christopher and subsequently assigned its interest in that property to Commonwealth; the defendants were Awesome Properties, Robert Starkey who was the sole member of Awesome Properties, and Fayetteville; and the City of Scottsboro was a third-party defendant. The trial court later granted a motion of Industrial Port and Rail Center of Scottsboro, LLC, to intervene as a defendant.
The following largely undisputed facts summarized in the trial court's judgment are based on the stipulated facts and deeds jointly submitted by the parties:
"1. The properties involved in this case are situated on Goose Pond Island.
"2. In or about 1969, Revere Copper & Brass, Inc. ('Revere') constructed a barge unloading facility and industrial conveyor system for the purpose of conveying alumina from barges on the Tennessee River to its reduction plant on real property in the middle of Goose Pond Island, where the alumina was converted to aluminum. Revere operated the barge unloading facility and industrial conveyor system in this manner until 1982, when Revere ceased operations on Goose Pond Island.
"3. For some time before, during, and after Revere operated on Goose Pond Island, the real property upon which Revere's facilities were located was owned by the Industrial Development Board of the City of Scottsboro (the 'IDB'). All of the relevant real properties on Goose Pond Island owned by the parties in this case trace back to the IDB.
"The Defendants' Property:
"4. In 1987, about five years after Revere closed, the IDB divided its real property and conveyed the industrial property that was the former site of the Revere reduction plant and a non-exclusive easement to Scottsboro Development Corporation ('SDC'). The deed for this conveyance includes the first reference to a non-exclusive easement which was 'for the existing access road and conveyor to the barge unloading facility ...' (the 'Easement').
"5. In 2006, SDC sold the industrial property and the Easement to Awesome Properties, LLC ('Awesome Properties'). Awesome Properties executed a mortgage in favor of Peoples Independent Bank, which was ultimately assigned to Fayetteville Holdings, LLC ('Fayetteville Holdings'). At the time of trial and after several foreclosures, Fayetteville Holdings owned the majority of the former Revere site, and Awesome Properties, LLC owned smaller portions of it. Following trial, Fayetteville Holdings assigned Awesome Properties' debt to FH Holdings, LLC, which foreclosed on Awesome Properties' remaining property. FH Holdings, LLC then conveyed all interest in the Easement and this litigation back to Fayetteville Holdings, *595 so that Fayetteville Holdings is the only remaining party in this litigation with current ownership of industrial property and the Easement.
"6. The Industrial Port and Rail Center of Scottsboro, LLC has a lease with an option to buy Fayetteville Holdings' interest in the property.
"The Plaintiffs' Property:
"7. In 2003, the City of Scottsboro purchased the property that was burdened by the Easement and the City purchased the property subject to the Easement.
"8. In 2005, the City of Scottsboro conveyed two tracts of property on Goose Pond Island to Plaintiff James Christopher. One tract contains the servient tenement. Importantly, the deed to it states that the conveyance is subject to 'an easement for an Existing Access Road and Conveyor to Barge Unloading Facility consisting of approximately 11.88 acres.' The other adjacent tract was also deeded to James Christopher subject to the Easement.
"9. During the course of this litigation, there were some additional conveyances between James Christopher, Goose Pond Development Group, and SOUTHBank regarding property on Goose Pond Island burdened by the Easement. Each relevant conveyance was made subject to the Easement. As of the time of the trial, James Christopher ('Christopher') and SOUTHBank, FSB owned property adjacent to the former Revere site. (After trial, SOUTHBank, FSB assigned its interest in the real property and this litigation to Commonwealth Savingshares Corporation ('Commonwealth'), which was substituted for SOUTHBank, FSB by this Court's Order of May 25, 2016. This Judgment will continue to refer to SOUTHBank although it now applies to Commonwealth.)
"10. Beginning at the Tennessee River at the barge unloading facility, the industrial conveyor runs some 4000' together with an access road which generally runs alongside the conveyor, crosses Christopher's property, then crosses SOUTHBank's property (together, about 2300'), and then runs about 1700 more feet on Fayetteville Holdings' property before terminating at a silo. The balance of the land burdened by the easement is wooded and undeveloped.
"11. This case involves a dispute about the Easement involving the conveyor, the access road, and the barge facility."
In the judgment, the trial court summarized the repleaded claims and the subsequent proceedings as follows:
"2. Plaintiff SOUTHBanks' Amended Complaint against Defendants Fayetteville Holdings, Awesome Properties, and Robert Starkey requested declaratory relief, and asked this Court to determine whether Fayetteville Holdings had an Easement over its property for the conveyor and access road, and whether the conveyor should be removed. SOUTHBank claimed that the conveyor was abandoned, that Fayetteville does not own the barge terminal, and that the continued existence and use of the Easement violated City zoning. SOUTHBank also alleged that the continued use of the Easement constituted trespass and a nuisance. SOUTHBank also sought to quiet title to its own property as to the Easement, and asked for injunctive relief in the form of removal of the conveyor.
"3. Plaintiff James Christopher's January 14, 2015, Amended Complaint was similar, in that it contained counts for trespass, nuisance, and declaratory *596 relief seeking determinations that City zoning and/or [Tennessee Valley Authority] permitting prevented use of the Easement, and also that the Easement had been abandoned. Christopher also asked the Court to find that the conveyor and terminal should be dismantled and removed.
"4. On January 15, 2015, Defendant Fayetteville Holdings, LLC filed its Amended and Restated Complaint, which included claims of trespass for Plaintiffs' interference with its use of the Easement, as well as a claim for declaratory relief seeking a determination that the Easement was valid, and a claim for injunctive relief to enjoin the Plaintiffs from interfering with Defendants' use of that Easement. Fayetteville alternatively claimed a prescriptive easement.
"5. On January 15, 2015, Defendant Industrial Port and Rail Center of Scottsboro, LLC (formerly known as Fayetteville Jackson Holdings, LLC) requested a declaratory judgment, determining that the Easement exists, is valid, and is enforceable over and against the servient tenement.[1]
"6. The City of Scottsboro did not file an amended complaint, but did file a general denial on January 21, 2015.
"7. At a hearing on May 6, 2015, the parties all agreed that the only remaining jury claims in this litigation were SOUTHBank and Christopher's claims against Robert Starkey (the sole member of Awesome Properties), individually. SOUTHBank and Christopher agreed to dismiss those claims. As a result, only equitable claims remained and all parties agreed to waive any jury demand. This Court's order of June 3, 2015, removed the case from the jury docket, and this case was tried as a bench trial from January 25, 2016 through January 28, 2016."
"[1] On January 14, 2015, Defendant Awesome Properties filed an Amended Complaint seeking declaratory and injunctive relief as to the validity of the Easement, and sought a declaration that Christopher's actions in attempting to build a road underneath the conveyor constituted unlawful interference with use of the Easement. Plaintiff SOUTHBank, Plaintiff Christopher, and Defendant Fayetteville Holdings all filed Motions to Dismiss Awesome's complaint. After considering this issue at the hearing on May 6, 2015, this Court agreed and struck Awesome's Complaint in its Order of June 3, 2015. Awesome Properties remained in the litigation as a defendant. At trial, Awesome Properties also sought declaratory relief, requesting that this Court find that Awesome Properties' remaining parcels on Goose Pond Island were benefited by the easement. On April 1, 2016, Fayetteville Holdings filed notice that the remaining parcels on Goose Pond Island owned by Awesome Properties had been foreclosed upon, and that Fayetteville Holdings was the only party to this litigation with current ownership of the Easement. Awesome Properties' right of redemption to the recently foreclosed upon parcels expires on March 10, 2017."
The trial court found the following facts elicited at trial:
"1. In 2003, the City of Scottsboro, during its ownership of the property burdened by the Easement, applied to [the Tennessee Valley Authority] for rezoning of shoreline property on Goose Pond Island. It submitted a Land Use Application that clearly indicated an intention to leave the area surrounding the barge terminal industrial. The Application did not indicate a request for change to the industrial zoning classification of the barge terminal or the 11.88 *597 acres containing the Easement. Elsewhere on the same map, there were symbols indicating a change in zoning from industrial to other zoning classifications.
"2. In 2004, Act 2004-457 passed the Alabama Legislature. This Act was intended to annex Goose Pond Island into the City of Scottsboro, less and except the industrial park in the center of the island (the dominant tenement served by the Easement). Probate Clerk Lana Townson confirmed that no copy of the proposed Act or any map showing what was to be annexed was filed in the Probate Office.
"3. John Williamson of Scottsboro Development Corporation [ (hereinafter sometimes referred to as 'SDC') ], Defendants' predecessor in title, whom the Court found to be a credible witness, testified that Scottsboro Development Corporation received no direct notice of annexation, or any notice of any kind.
"4. The City of Scottsboro took no affirmative steps to zone any of the island immediately following annexation, and so all the annexed property was zoned residential (R-l) only as a result of the default zoning provision of the City's 1985 zoning ordinance. The City gave no notice to anyone (including Scottsboro Development Corporation), and held no hearing involving the default zoning of the Island as R-1.
"5. At the time of annexation, the City owned the servient tenement. It was sold by the City to Christopher in 2005, still expressly subject to the Easement. It is undisputed that the conveyor, access road, and terminal were physically present on the servient tenement when Christopher and SOUTHBank obtained the adjacent parcels.
"6. SDC's industrial land, including the Easement and the barge terminal, retained its industrial character following the annexation. The 4000' conveyor remained standing intact (as it does today). The industrial property owned by SDC (and later Awesome Properties and Fayetteville Holdings) is the dominant estate that is benefited by the Easement.
"7. In order to establish that the Easement has been abandoned, the Plaintiffs must show intent by Defendants and SDC to abandon the easement and this they did not do. See McCulloch v. Roberts, 290 Ala. 303, 307, 276 So.2d 425, 428 (1973). As shown by the credible testimony of John Williamson, Robert Starkey, and Ronnie Dobbins, and by other evidence, neither SDC nor its successors-in-title had any intention of abandoning the Easement. To the contrary, each owner has affirmatively maintained the Easement. As shown by the testimony of Mr. Williamson, SDC operated the conveyor on occasion for maintenance purposes and Southeastern Metals[, a lessee,] used the road access to the barge terminal for the purpose of loading equipment at the barge terminal during SDC's ownership of the dominant estate and Easement. SDC and Awesome Properties both marketed the industrial property, the Easement (including the access road and the conveyor system), and the barge terminal and, as testified by Ray Keller, the Industrial Port and Rail Center of Scottsboro has signed a lease with the intention of using the conveyor system, road access, and the barge terminal. SDC and Awesome Properties properly applied to the Tennessee Valley Authority for permits to use the barge terminal. SDC received approval from both the Army Corps of Engineers and the Tennessee Valley Authority to use the barge terminal and to change the direction the conveyor ran. Awesome Properties received approval *598 from the Army Corps of Engineers to use the barge terminal. The very fact that SDC marketed the Easement and the barge terminal to Awesome Properties and later sold it to Awesome Properties evidences its intent not to abandon the Easement. Awesome Properties subsequently conducted routine maintenance on the Easement area by mowing and repaving parts of the access road and pressure-washing the barge terminal and Fayetteville Holdings has continued such maintenance."
On June 24, 2016, the trial court entered the judgment, finding the following regarding the easement:
"a. The Plaintiffs had the burden to prove by clear and convincing evidence that the Easement has been abandoned. See, Andrews v. Hatten, 794 So.2d 1184, 1188 (Ala. Civ. App. 2001) ; Auerbach v. Parker, 558 So.2d 900, 901 (Ala. 1989). The Plaintiffs, however, failed to present any evidence of an intention to abandon by any Defendant (or any predecessor in Defendants' title), and failed to meet the clear and convincing standard.
"b. The deeded Easement for the conveyor, access road, and barge terminal remains valid and in existence. Fayetteville Holdings owns the Easement (including the barge terminal), and so it cannot be guilty of trespass to its own property. The Easement has not been abandoned by Fayetteville Holdings or any predecessor to its title, nor has it been rendered impossible of use, nor is its use otherwise restricted. Further, it does not constitute a nuisance.
"c. The City of Scottsboro took no affirmative position as to the application of its zoning ordinance to the Easement. The City clarified at the start of the trial that it intended to abide by this Court's determination as to whether the Easement remains valid and available for industrial use. The Court has determined it has jurisdiction and authority to make a determination regarding the applicability of the zoning ordinance.
"d. The City of Scottsboro's zoning ordinance does not apply to prevent use of the Easement and/or the City and Plaintiffs are equitably estopped from applying the zoning ordinance to prevent or interfere with the use of the Easement.
"e. Also, the Court finds that the Easement meets all criteria under Alabama law to be considered a variance under the zoning ordinance.
"f. The Easement can be used for industrial purposes, and Christopher, SOUTHBank, or any other party are hereby enjoined from interference with the Easement.
"g. Should Awesome Properties exercise its right of redemption on the recently foreclosed upon parcels and regain title to part of the dominant estate. Awesome Properties has a right to use the Easement and the conveyor system."
In the judgment, the trial court found "that no trespass or nuisance claim was proved by SOUTHBank or Christopher." The trial court denied the relief requested by the plaintiffs and all other relief not expressly addressed in the judgment.
On August 3, 2016, Commonwealth, the successor in interest to SOUTHBank, filed a notice of appeal to our supreme court. The supreme court transferred the appeal to this court pursuant to § 12-2-7, Ala. Code 1975.
Discussion
The language in the deed conveying the industrial property and the easement to Awesome Properties states that the easement is "for the existing access road and conveyor to the barge unloading *599 facility." Commonwealth contends that the ordinance renders an essential purpose of the easement impossible by prohibiting the conveyor. "The general rule is that an easement given for a specific purpose terminates as soon as the purpose ceases to exist, is abandoned, or is rendered impossible of accomplishment." Tatum v. Green, 535 So.2d 87, 88 (Ala. 1988) (citing Sasser v. Spartan Foods Sys., Inc., 452 So.2d 475 (Ala. 1984) ). Commonwealth asserts that whether the conveyor is prohibited and, accordingly, whether the easement should be terminated underlies the claims it asserted in the trial court. We therefore examine whether the ordinance prohibits the conveyor.
The City of Scottsboro annexed the properties on Goose Pond Island in 2004. Accordingly, in discussing the issues addressed in this opinion, we deem that the ordinance applied to the parties' properties at that time.[1] See Ex parte Lake Forest Prop. Owners' Ass'n, 603 So.2d 1045, 1047 (Ala. 1992) (determining whether signs were permissible under ordinance that governed after annexation of area where the signs were located). As shown in the record, the conveyor is partly located in an R-1 district, an area zoned for residential use under the ordinance. "The R-1 district is designed to facilitate the development of single-family, low-density residential area, with additional facilities limited to those which enhance and preserve the residential neighborhood environment." Scottsboro Zoning Ordinance, § 6.2. The ordinance, however, allows nonconformities that do not conform to the prescribed uses and structures if the nonconformities existed before the ordinance governed, as stated in § 5.1 of the ordinance:
"Within the districts established by this Ordinance or amendments that may later be adopted there exists lots, structures, uses of land and structures and characteristics of use which were lawful before this Ordinance was passed or amended, but which would be prohibited, regulated, or restricted under the terms of this Ordinance or future amendment.
"It is the intent of this Ordinance to permit these non-conformities to continue until they are removed, but not to encourage their survival. It is further the intent of this Ordinance that non-conformities shall not be enlarged upon, expanded or extended, nor be used as grounds for adding other structures or uses prohibited elsewhere in the same district."
Citing Olinger v. Collins, 470 So.2d 1183 (Ala. 1985), Commonwealth argues that the conveyor does not qualify as a nonconformity under the ordinance because, it asserts, the conveyor had not been used to transport alumina or other materials since 1982. In Olinger, the supreme court affirmed a judgment finding that a party had not begun to use a parcel for mobile-home sales until after an ordinance regulating such use went into effect, stating that "the general principle regarding non-conforming uses [is] that such a use must be actual, not just intended, at the time the zoning ordinance that prohibits the use goes into effect." Id. at 1186. That principle is inapposite to the present situation. In this case, it is undisputed that the conveyor had been used for industrial purposes. The relevant question is whether, when the ordinance became applicable to the parties' properties, the use of the easement for the conveyor continued to be *600 an existing use in order to qualify as a nonconformity under the ordinance.
"The elements which indicate the presence of an 'existing use' have been defined as follows:
" 'The expression "existing use," though difficult to define, is, as a fact, not difficult of determination. .... Where a property is built for or adapted to a particular use, the question of existing use is determined by ascertaining as near as possible the intention of the owner, in connection with the fact of a discontinuance or apparent abandonment of use; ....' Appeal of Haller Baking Co., 295 Pa. 257, 145 A. 77 [ (1928) ] ; Landay v. Board of Zoning Appeals, 173 Md. 460, 196 A. 293, 114 A.L.R. 984 [ (1938) ] ; Board of Zoning Adjustment for City of Lanett v. Boykin, [265 Ala. 504, 92 So.2d 906 (1957) ].
"To work an abandonment of the right to continue a non-conforming use connotes a voluntary act on the part of the owner."
Green v. Copeland, 286 Ala. 341, 343, 239 So.2d 770, 771 (1970).
"The word 'discontinuance' as applied to zoning ordinances is equivalent to abandonment. Board of Zoning Adjustment for the City of Lanett v. Boykin, 265 Ala. 504, 92 So.2d 906 (1957). Discontinuance or abandonment involves more than mere cessation-it requires an intent to abandon, and some overt act (or failure to act) manifesting one's intent to abandon. Boykin, supra.
" 'A temporary cessation [to devote property to a non-conforming use], even for a lengthy period, caused by circumstances over which the property owner had no control, is generally held not to constitute proof of a discontinuance in the sense of abandonment.' (Citations omitted.)
" Green v. Copeland, ... 286 Ala. [341,] 343, 239 So.2d [770,] 772 [ (1970) ]."
Robinson v. City of Huntsville, 622 So.2d 1309, 1312 (Ala. Civ. App. 1993).
In support of its argument, Commonwealth refers to only the testimony of John Williamson, an employee of Scottsboro Development Corporation ("SDC"), Awesome's predecessor in interest, that the conveyor was periodically maintained. Although the conveyor might not have been actively used to transport materials in 2004, when the parties' properties were annexed and SDC still owned the industrial property and the easement, Williamson's testimony supports a finding that there was no intent to discontinue using the conveyor for industrial purposes. We therefore conclude that the conveyor qualified as a permissible nonconformity pursuant to the ordinance.
In support of its argument, Commonwealth also cites § 5.8 of the ordinance, which states:
"It shall be the duty of the owner of each non-conforming use or structure to register with the building official the nonconforming use or structure within one (1) year following the adoption of this Ordinance. In addition, every five (5) years thereafter such non-conformance must be verified by questionnaire from the building official stating that such use is still operating and in existence on the property. In any challenge to non-conforming status, the party claiming such status shall carry the burden of proving non-conformance. However, registration of the non-conformance constitutes prima facie evidence of the non-conformance of uses and structures specifically listed on the face of the registration. Failure to register or to reply to the questionnaire creates a rebuttable presumption of abandonment."
*601 Commonwealth asserts that the conveyor was not registered as a nonconformity and, thus, that the use of the conveyor for industrial purposes was not preserved as a nonconforming use. The ordinance, however, provides only that the failure to register a nonconforming use creates a rebuttable presumption of abandonment of that use. As discussed earlier, Commonwealth has not demonstrated that there was an intent to discontinue using the conveyor for industrial purposes and, thus, that the conveyor stopped being a permissible nonconformity under the ordinance.
Commonwealth additionally cites § 5.33 of the ordinance, which states: "If any such non-conforming use of land ceases for any reason for a period of more than thirty (30) consecutive days, any subsequent use of such land shall conform to the regulations specified by this Ordinance for the district in which such land is located." Commonwealth, however, refers to the use of the conveyor, which is a structure. Section 5.55 of the ordinance provides:
"When a non-conforming use of a structure, or structure and premises in combination, is discontinued or abandoned for six (6) consecutive months or for eighteen (18) months during any three (l) year period (except when government action impedes access to the premises), the structure, or structure and premises in combination, shall not thereafter be used except in conformity with the regulations of the district in which it is located."
Regardless of which of those sections applies, Commonwealth cites the ordinance to support its argument that, because the conveyor had not transported industrial materials since 1982, the conveyor was not in actual or continuous use. Because Commonwealth does not advance any argument that the maintenance of the conveyor, and thus the intent to use the conveyor for industrial purposes, had lapsed for a length of time exceeding the periods specified in § 5.33 or § 5.55, that issue is not before us. As discussed earlier, Commonwealth has not demonstrated that there was an intent to discontinue using the conveyor for industrial purposes and, thus, that the conveyor stopped being a permissible nonconformity under the ordinance. Commonwealth, therefore, has not established that the ordinance prohibited the conveyor or that, consequently, the easement was terminated.
Commonwealth next contends that the conveyor constituted a nuisance. Alabama Code 1975, § 6-5-120, provides:
"A 'nuisance' is anything that works hurt, inconvenience, or damage to another. The fact that the act done may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful or such as would affect only one of a fastidious taste, but it should be such as would affect an ordinary reasonable man."
As provided in § 6-5-121, Ala. Code 1975, "[a] private nuisance is one limited in its injurious effects to one or a few individuals," and "[a] private nuisance gives a right of action to the person injured." The party alleging a nuisance claim "must ... prove the tort elements of duty and causation in order to make a prima facie case of nuisance." Chambers v. Summerville United Methodist Church, Inc., 675 So.2d 1315, 1316 (Ala. Civ. App. 1996).
In support of its nuisance argument, Commonwealth asserts that the conveyor is incompatible with residential use, blocks Commonwealth's ability to move from one side of its property to another, and impairs Commonwealth's ability to develop its property. Commonwealth's property, however, is subject to an easement that expressly allows for the existence and use of the conveyor. A party's *602 activities that are within the rights obtained in an easement do not constitute an unlawful interference with another's property that is subject to the easement. Robichaux v. AFBIC Dev. Co., 551 So.2d 1017, 1021 (Ala. 1989) (affirming denial of trespass and nuisance claims). "The well-settled law in Alabama is that 'one who purchases land subject to, or with notice of, an easement, takes the land subject to that easement.' " Id. at 1019 (quoting Bruner v. Walker, 366 So.2d 695, 696 (Ala. 1978) ). Commonwealth does not dispute that it purchased its property with notice of the easement, and it has presented no facts to show that Awesome Properties or Fayetteville have acted outside the scope of the easement. As a result, Commonwealth's assertions do not establish the element of duty necessary for proving its nuisance claim. See id. at 1021 ("Without an unlawful interference with the Robichauxs' property, no cause of action can be maintained under the theories of trespass and/or nuisance.").
Commonwealth additionally asserts that the conveyor is illegal under the ordinance. As discussed earlier, Commonwealth has not established that the ordinance prohibits the conveyor. Commonwealth also asserts that the conveyor is unsightly and in disrepair. Commonwealth, however, provides no evidence indicating that it has been hurt, inconvenienced, or damaged by the aesthetic appearance and condition of the conveyor. We therefore conclude that Commonwealth's assertions do not present a ground for reversing the trial court's judgment insofar as it denied Commonwealth's nuisance claim.
In light of the foregoing discussion and holdings, we pretermit consideration of Commonwealth's arguments regarding the trial court's determination that the City of Scottsboro was equitably estopped from applying the ordinance to the easement and the trial court's finding that the easement met the criteria for a variance under the ordinance. Addressing those arguments would not impact our holdings affirming the trial court's judgment finding the easement valid on the basis that the ordinance permitted the conveyor and that the conveyor was not a nuisance. We therefore affirm the judgment.
AFFIRMED.
Thompson, P.J., and Pittman, Thomas, and Moore, JJ., concur.

In light of our discussion and holdings, we pretermit consideration of Commonwealth's arguments regarding the trial court's finding that the City of Scottsboro was equitably estopped from applying the ordinance to the easement.